**[This opinion has been published in *Ohio Official Reports* at 79 Ohio St.3d 509.]**

LUNTZ CORPORATION, APPELLANT, *v*. PUBLIC UTILITIES COMMISSION OF

OHIO ET AL., APPELLEES.

**[Cite as *Luntz Corp. v. Pub. Util. Comm.*, 1997-Ohio-342.]**

*Public Utilities Commission—Electric utility has no affirmative duty or obligation*
*to conduct an ongoing review of every customer's usage and load-demand*
*levels to ensure that every customer is being served under the most*
*economical tariff possible—"Distribution line" in R.C. 4933.81, construed.*

(No. 96-962—Submitted June 11, 1997—Decided October 1, 1997.)

APPEAL from the Public Utilities Commission of Ohio, No. 94-1783-EL-CSS.

———————————

{¶ 1} This appeal involves an order by the Public Utilities Commission of
Ohio in a complaint case brought by Luntz Corporation ("Luntz") against Ohio
Edison Company for failing to disclose possible alternate rates under which Luntz
might have been served from 1980 through 1991.

{¶ 2} Luntz is a family-run business that buys, processes and brokers scrap
metal and sells it to steel mills and foundries. Luntz has facilities located in several
Ohio cities, including Warren. Ohio Edison has provided electric service to Luntz's
Warren facility under a number of different tariffs since the mid-1970s.

{¶ 3} In 1981, Luntz contacted Ohio Edison about securing an adequate
electric supply for a new hydraulic shear. The shear used hydraulic pistons to
power a guillotine-like blade to cut metal that did not fit into Luntz's automobile
shredder. Ohio Edison analyzed the electric demands and determined that the most
economical way both to provide the necessary electric capacity to Luntz for the
new shear and to avoid electrical interference to other customers near Luntz's
facility was for Luntz to construct a new substation and take service at the 23 kV
transmission voltage. After Luntz installed the substation and began taking service

at 23 kV, the flicker problem at a nearby restaurant was virtually eliminated (a voltage fluctuation was detectable with an ammeter, but no flicker could be visually observed).

{¶ 4} In 1991, Luntz hired a consultant to audit Luntz's electric bills and to help Luntz reduce its power costs. Shortly thereafter, Luntz contacted Ohio Edison with questions regarding Luntz's electric-load demand. Ohio Edison met with Luntz, provided Luntz with billing and usage information and power factor information, and ultimately reinstalled a magnetic tape meter at Luntz's request in mid-1991.

{¶ 5} On November 4, 1994, pursuant to R.C. 4905.26, Luntz filed a complaint with the commission against Ohio Edison alleging that Ohio Edison had (1) erroneously and negligently advised Luntz that it was required to construct a substation and to enter into a new contract for electric service at Luntz's Warren facility in order to increase the capacity at that facility and (2) concealed and misrepresented, from February 1980 to September 1991, the availability of tariffs that were less costly than the tariff under which Luntz was actually being served. Luntz raised no tariff-related issues regarding Ohio Edison's service before 1980 or after 1991.

{¶ 6} Luntz also alleged that Ohio Edison had wrongfully removed the magnetic tape meter from Luntz's facility in 1986, which prevented Luntz from monitoring its power factor and on-peak/off-peak electrical demands, and prevented Luntz from receiving an off-peak discount.

{¶ 7} Ohio Edison filed an answer to the complaint, denying the substance of the complaint, setting forth various affirmative defenses, and asking that the complaint be dismissed. An attorney examiner found that the complaint stated a claim cognizable under R.C. 4905.26, and scheduled the matter for a hearing. The case went to hearing in June 1995. Rebuttal testimony was heard in August 1995.

**{¶ 8}** The commission found that Luntz had failed to meet its burden of proof. Luntz timely sought rehearing. However, thirteen days later, Luntz filed an amended application for rehearing and a request for oral argument, raising new issues not addressed in Luntz's original application for rehearing. The commission disregarded the amended application for rehearing because it was filed beyond the thirty-day period required in R.C. 4903.13, and denied the claims raised in the application for rehearing.

**{¶ 9}** The cause is now before this court upon an appeal as of right.

_____

*Steve J. Edwards*, for appellant.

*Betty D. Montgomery*, Attorney General, *Duane W. Luckey* and *Johnlander Jackson-Forbes*, Assistant Attorneys General, for appellee, Public Utilities Commission of Ohio.

*James W. Burk; Roetzel & Andress Co., L.P.A.,* and *George W. Rooney, Jr.,* for intervening appellee, Ohio Edison Company.

_____

***Per Curiam.***

**{¶ 10}** Appellant poses eight propositions of law, nearly all of which ask us to reweigh the evidence of record. For the reasons that follow, we decline to do so and affirm the order of the commission below.[1]

**{¶ 11}** We will not reverse a commission order unless it is against the manifest weight of the evidence. R.C. 4903.13. Nor will we reweigh evidence or substitute our judgment for that of the commission on factual questions where there is sufficient probative evidence in the record to show that the commission's decision is not manifestly against the weight of the evidence and is not so clearly

_____

1. Luntz incorrectly named Ohio Edison as the appellee in its notice of appeal in this case. However, an incorrect caption is not a jurisdictional defect under R.C. 4903.13. *Consol. Rail Corp. v. Pub. Util. Comm.* (1988), 40 Ohio St.3d 252, 533 N.E.2d 317.

unsupported by the record as to show misapprehension, mistake, or willful disregard of duty. *Time Warner AxS v. Pub. Util. Comm.* (1996), 75 Ohio St.3d 229, 233, 661 N.E.2d 1097, 1101; *Canton Storage & Transfer Co. v. Pub Util. Comm.* (1995), 72 Ohio St.3d 1, 4, 647 N.E.2d 136, 140; *Indus. Energy Consumers of Ohio Power Co. v. Pub. Util. Comm.* (1994), 68 Ohio St.3d 547, 554, 629 N.E.2d 414, 420. However, we have complete and independent power of review as to all questions of law. *Id.; Indus. Energy Consumers of Ohio Power Co. v. Pub. Util. Comm.* (1994), 68 Ohio St.3d 559, 563, 629 N.E.2d 423, 426.

{¶ 12} The instant appeal is based almost entirely upon factual arguments. The commission's decisions on these issues are all amply supported by record evidence and are not subject to reversal on that basis. *Id.*

{¶ 13} Luntz raises only two issues that could be considered questions of law: (1) whether Ohio Edison had a duty to inform Luntz of alternate rates and (2) whether the definition of the term "distribution line" in R.C. 4933.81 controls in the case at bar. For the reasons that follow, we affirm the commission's decision on each of these issues.

{¶ 14} The commission has considered alternate-rate arguments similar to those now posed by Luntz, and established a positive-inquiry standard regarding the availability of alternate customer rates. *White Plastics Co., Inc. v. Columbus & S. Ohio Elec. Co.* (Sept. 25, 1984), Pub. Util. Comm. No. 83-650-EL-CSS, unreported. Under *White Plastics* and its progeny a utility has a duty "upon inquiry, to inform the customer about the existence and availability of an alternate rate. However, *it is not a requirement that a utility itself initiate regular reviews of a customer's bills in order to determine if an alternate rate is more advantageous. It is upon the inquiry of the customer that a company has a duty to disclose the availability of alternate rate schedules."* (Emphasis added.) *N. Hill Marble v. Ohio Edison Co.* (Feb. 5, 1985), Pub. Util. Comm. No. 84-610-EL-CSS, unreported, at 2.

4

**{¶ 15}** Thus, a utility has no affirmative duty or obligation to conduct an ongoing review of every customer's usage and load-demand levels to ensure that every customer is being served under the most economical tariff possible. *Id.* However, if a customer inquires about possible alternate rates, then the utility has a duty to disclose to the customer the availability of any applicable alternate-rate schedules. *Id.*

**{¶ 16}** We have not previously reviewed the propriety of the commission's positive-inquiry standard. We find that this policy is reasonable, striking a balance between a utility's duty to serve its customers in a reasonable manner, where the utility lacks intimate knowledge about fluctuations in the customers' day-to-day and future business operations, and its customers' desire to be served under the most economical rate possible.

**{¶ 17}** Moreover, "long-standing administrative interpretations are entitled to special weight." *Cleveland v. Pub. Util. Comm.* (1981), 67 Ohio St.2d 446, 451, 21 O.O. 3d 279, 282, 424 N.E.2d 561, 565. Yet the commission must, when appropriate, be willing to change its policies. *Consumers' Counsel v. Pub. Util. Comm.* (1984), 10 Ohio St.3d 49, 51, 10 OBR 312, 313, 461 N.E.2d 303, 304-305.

**{¶ 18}** Luntz made little effort to show that the commission should now require Ohio Edison to conduct ongoing reviews of the usage and load demands of each of its customers to determine whether those customers are being served on the most economical rate possible. Absent proof that the positive-inquiry policy should be changed, the commission is bound to apply the standard in effect at the time it reviewed the matter in question. *Id.*

**{¶ 19}** Under the circumstances presently before us, we find that the commission properly refused to change its positive-inquiry standard in favor of the standard espoused by Luntz. Thus, Ohio Edison had no affirmative duty to monitor Luntz's usage and demand levels and notify Luntz that there may have been a more economical rate under which Luntz could be served.

**{¶ 20}** Luntz also argues that the definition of "distribution line" in R.C. 4933.81(C) is binding in this case. We disagree.

**{¶ 21}** R.C. 4933.81 of the Certified Territory Act defines the term "distribution line" as follows:

"*As used in sections 4933.81 to 4933.90 of the Revised Code*:

"* * *

"(C) 'Distribution line' means any electric line having a design voltage below thirty-five thousand volts phase to phase which is being or has been used primarily to provide electric service directly to electric load centers by the owner of such line." (Emphasis added.)

**{¶ 22}** The commission explained the limited application of this definition as follows:

"The General Assembly in enacting that section and following sections of the Revised Code was determining utility boundaries using distribution lines. In order to avoid the requirement that this Commission make an individual determination regarding whether a particular line functioned as a distribution line or a transmission line, the General Assembly defined 23 kV lines for the purpose of that statute as distribution lines."

**{¶ 23}** We agree. The bright-line definition used by the General Assembly was designed as an administrative convenience to reduce the number of individual power lines that the commission needed to consider in the mapping- and territory-certification process. The General Assembly did not intend that this particular definition of "distribution line" create a bright-line test for any other purpose, and expressly limited its application to the Certified Territory Act.

**{¶ 24}** Luntz had the burden of proving its complaint against Ohio Edison. *Grossman v. Pub. Util. Comm.* (1966), 5 Ohio St.2d 189, 34 O.O.2d 347, 214 N.E.2d 666; *Ohio Bell Tel. Co. v. Pub. Util. Comm.* (1984), 14 Ohio St.3d 49, 50, 14 OBR 444, 445, 471 N.E.2d 475. The commission considered the conflicting

evidence regarding each aspect of Luntz's claims against Ohio Edison and determined not only that Ohio Edison had acted reasonably during the complaint period, but also that Luntz had suffered no injury during the complaint period. Each of these findings is amply supported by record evidence. Accordingly, we affirm the order of the commission below.

*Order affirmed.*

MOYER, C.J., RESNICK, F.E. SWEENEY, YOUNG and LUNDBERG STRATTON, JJ., concur.

DOUGLAS, J., concurs in judgment only.

PFEIFER, J., dissents and would reverse the commission's order.

FREDERICK N. YOUNG, J., of the Second Appellate District, sitting for Cook, J.

—————————