[This decision has been published in *Ohio Official Reports* at 95 Ohio St.3d 401.]

FIRSTENERGY CORPORATION ET AL., APPELLANTS, *v*. PUBLIC UTILITIES COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *FirstEnergy Corp. v. Pub. Util. Comm*., 2002-Ohio-2430.]

*Public Utilities Commission—Electric companies—R.C. 4928.67—Contract or tariff providing for net energy metering—Commission's order modifying electric company's net-generator provisions in its transition plan regarding the utility's provision of competitive electric service in Ohio unreasonable and unlawful when the net-generator provisions complied with applicable statutory requirements and the commission's net-metering rule.*

(No. 2001-0573—Submitted February 5, 2002—Decided June 5, 2002.)

APPEAL from the Public Utilities Commission of Ohio, Nos. 99-1212-EL-ETP, 99-1213-EL-ATA, and 99-1214-EL-AAM.

———————————

**ALICE ROBIE RESNICK, J.**

{¶1} With the passage of Am.Sub.S.B. No. 3 ("S.B. 3") in 1999, the General Assembly enacted a comprehensive statutory scheme to implement competition in Ohio's retail electricity market. Most of the provisions of S.B. 3 are contained in newly enacted R.C. Chapter 4928, and most provisions became effective on October 5, 1999. R.C. 4928.31, part of S.B. 3, requires that each electric utility file a transition plan with the Public Utilities Commission of Ohio regarding the utility's provision of competitive electric service in Ohio.

{¶2} In December 1999, FirstEnergy Corp. ("FirstEnergy"), on behalf of its Ohio operating companies (Ohio Edison Company, the Cleveland Electric Illuminating Company, and the Toledo Edison Company), filed with the commission its proposed transition plan together with applications for tariff

approval. Stipulated settlement agreements were entered into among the parties and evidentiary hearings and local public hearings were held. These proceedings resulted in an opinion and order, dated July 19, 2000, in which the commission approved the settlement agreements and FirstEnergy's transition plan as modified by the settlement agreements and the commission order, subject to final approval of FirstEnergy's compliance tariffs to be filed pursuant to the order, and approved FirstEnergy's proposed tariff amendments.

{¶3} After informal review of FirstEnergy's proposed compliance tariffs by interested parties and after informal comments by the parties, FirstEnergy modified its proposed compliance tariffs and made a final submission to the commission on August 28, 2000. One of the compliance tariff provisions is the subject of this appeal: the Net-Energy Metering Rider (the so-called August Rider) that FirstEnergy proposed for inclusion in the tariff of each of its Ohio operating companies. By its entry, dated November 21, 2000, the commission found that FirstEnergy's proposed August Rider should be modified as recommended by the commission's staff, and ordered FirstEnergy to make those modifications. The question in this appeal as of right is whether, as claimed by FirstEnergy, the commission acted unlawfully and unreasonably in issuing its November 21, 2000 entry, which failed to approve FirstEnergy's proposed August Rider and, instead, ordered modifications to it.

I

Net-Metering Requirements

{¶4} S.B. 3 included a provision requiring retail electric service providers to develop a standard contract or tariff providing for net metering, a service introduced in S.B. 3. R.C. 4928.67. The term "net metering" is defined as "measuring the difference in an applicable billing period between the electricity supplied by an electric service provider and the electricity generated by a customer-generator which is fed back to the electric service provider." R.C. 4928.01(A)(31).

A customer-generator is a user of a net-metering system. R.C. 4928.01(A)(30). A net-metering system is a facility for the production of electrical energy that (a) uses as its power source either solar power, wind, biomass, landfill gas, or hydropower, or uses a microturbine or fuel cell; (b) is located on a customer-generator's premises; (c) operates in parallel with the electric utility's transmission and distribution facilities; and (d) is intended primarily to offset part or all of the customer-generator's requirements for electricity. R.C. 4928.01(A)(32). As FirstEnergy points out, a customer-generator may consume electricity from an electric service provider during one period of time but feed back the electricity that is generated in excess of consumption in another period.

{¶5} Under R.C. 4928.67, the charges associated with net metering are determined by reference to the charges in the underlying tariff rate schedules under which a customer takes electric service. As a result, for ease of administration, FirstEnergy chose to provide for net metering through a tariff rider, rather than create a separate tariff or a separate set of tariff schedules applicable solely to net metering. FirstEnergy filed its proposed rider as a part of its transition plan filing in December 1999, and supplemented its December filing by submitting a revised net-metering rider in April 2000 (the so-called April Rider). On April 6, 2000, pursuant to R.C. 4928.11, the commission adopted a set of rules entitled "Electric Service and Safety Standards" to be included as Ohio Adm.Code Chapter 4901:1-10.

{¶6} Ohio Adm.Code 4901:1-10-28, the net-metering rule, includes requirements for meters: "Net metering shall be accomplished using a single meter capable of registering the flow of electricity in each direction. A customer's existing single-register meter that is capable of registering the flow of electricity in both directions satisfies this requirement." Ohio Adm.Code 4901:1-10-28(C).

{¶7} As FirstEnergy points out, under the net-metering rule, a customer-generator could use a meter with a wheel showing electrical usage by movement

both forward (to show consumption) and backward (to show generation being supplied to the electric distribution company). Such a meter shows the net flow of electricity but cannot show separately the amounts of electricity that flowed in each direction as would the type of meter that would have been required under FirstEnergy's April Rider, and as FirstEnergy claimed is required by R.C. 4928.67(A)(2).

{¶8} As a result of the commission's net-metering rule and in consequence of the commission's July 29, 2000 order, FirstEnergy revised its April Rider and submitted its August Rider as a part of its proposed compliance tariffs. The August Rider varied from the April Rider in three relevant respects: First, it complies with the commission's net-metering rule, permitting a customer-generator to use a single meter that measures the net flow of electricity, so long as the meter's register runs both forward and backward, eliminating the necessity of installation of a new meter. Second, the August Rider eliminates the April Rider's requirement that the customer-generator pay distribution, transmission, and ancillary charges to FirstEnergy upon electricity provided to FirstEnergy. Third, the August Rider credits customer-generators for all unbundled charges contained in the underlying service tariff with respect to the electricity they supply, to the extent that it offsets their consumption for a given period.

II

August Rider

Commission-ordered Modifications

{¶9} On November 21, 2000, the commission issued an entry that disapproved the August Rider and, instead, ordered FirstEnergy to modify it as set forth in Attachment B to the entry. While FirstEnergy disagrees with the necessity or desirability of most of the ordered modifications, this appeal deals only with modifications respecting the assessment of charges and the allowance of credits to

net generators, i.e., those customer-generators that generate more electricity than they consume.

{¶10} FirstEnergy's proffered August Rider credited net generators only with the applicable generation charge of the underlying service tariff, based on the amount of electricity they supplied in excess of the amount they consumed in a given time period. The commission-ordered modifications would obligate FirstEnergy to credit a net generator not only for the generation charges for electricity it supplied in excess of its consumption, but for additional amounts equivalent to the charges for the following costs: transmission, distribution, ancillary services, transition (the regulatory transition charge and the generation transition charge), the Universal Service Fund, and the Energy Efficiency Fund. In this appeal, FirstEnergy takes issue only with the ordered modifications of its August Rider that would require FirstEnergy to pay or credit to a net generator the foregoing charges in addition to the electric generation charge.

III

Review of the Order

{¶11} This appeal does not turn on factual determinations, either as to the adequacy of, or the weight to be accorded to, the record evidence. Rather, it involves questions of law. This court has complete and independent power of review as to questions of law. See, e.g., *Luntz Corp. v. Pub. Util. Comm.* (1997), 79 Ohio St.3d 509, 512, 684 N.E.2d 43, 45. The determination for the court in this appeal is whether the commission acted unlawfully or unreasonably in ordering the net-generator modifications to FirstEnergy's August Rider. R.C. 4903.13 provides, "A final order made by the public utilities commission shall be reversed, vacated, or modified by the supreme court on appeal, if, upon consideration of the record, such court is of the opinion that such order was unlawful or unreasonable."

{¶12} The commission argues that R.C. 4928.67 controls and compelled its adoption of the net-metering rule, Ohio Adm.Code 4901:1-10-28, and its order of

modifications of the net-generator provisions of FirstEnergy's August Rider. FirstEnergy agrees that R.C. 4928.67 and the net-metering rule control, but disagrees that they compelled the ordered modifications of the August Rider. Nevertheless, while FirstEnergy's April Rider did not, FirstEnergy's August Rider did comply with the terms of the net-metering rule, as adopted by the commission.

{¶13} R.C. 4928.67 and the commission's net-metering rule speak in terms of measuring and charging or crediting for "electricity" produced or consumed. The August Rider as submitted provides for FirstEnergy's crediting or refunding to a net generator of the "energy charges of the unbundled generation component of the appropriate rate schedule." In other words, FirstEnergy must credit or pay to a net generator only the tariff charges for generation of the electricity by the net generator and supplied to FirstEnergy. The net-generator provisions of the August Rider speak solely in terms of electricity generated and supplied, as they should. A net-generator customer of FirstEnergy only generates and supplies electricity; it does not provide transmission, distribution, or ancillary services. It has no allowable transition costs for which transition charges are assessed, and is not responsible for paying into the Universal Service Fund or the Energy Efficiency Fund. Yet the commission-ordered modifications to the net-generator provisions of the August Rider would make FirstEnergy liable for payment or crediting of all of those additional charges, in conflict with several provisions of the Revised Code in addition to R.C. 4928.67(B)(2).

{¶14} First, electric utilities have a right to receive transition revenue through the imposition of a transition charge "billed on each kilowatt hour of electricity delivered to the customer." R.C. 4928.37(A)(1)(b). This right is contingent only upon the electric *utility* demonstrating to the commission's satisfaction in a transition case that the utility incurred just and reasonable transition costs that meet the criteria set forth in R.C. 4928.39. These costs represent regulatory assets and other costs incurred by the *utility* under regulation that will

not be recovered in a competitive environment. R.C. 4928.39(A) through (D). There is no counterpart to these costs that the customer-generator has or will incur, and the legislature makes clear that the *utility* "shall receive" the transition revenues to which the commission has deemed it to be entitled. R.C. 4928.37(A)(1).

{¶15} However, in its November 21, 2000 entry, the commission ordered FirstEnergy to pay these revenues to net generators on the electricity supplied by them. Instead of conforming to the statutory mandate that the *utility* "shall receive" its transition revenues, the commission would require the *utility* to pay transition charges to the customer-generator. This is contrary to law and is unreasonable.

{¶16} Second, the Energy Efficiency Fund rider charge imposed by R.C. 4928.61 is required to be assessed on all retail electric distribution rates. It is a uniform amount statewide, and it is determined by dividing an aggregate revenue target for a given year by the number of customers of electric distribution *utilities* in Ohio in the prior year. R.C. 4928.61(B)(1). Electric *utilities* such as FirstEnergy "shall remit" the revenues derived from this rider to the Ohio Director of Development on a quarterly basis. R.C. 4928.61(C)(1). Not only does the commission's order prevent FirstEnergy from collecting this revenue from net generators and remitting it to the state, but it also mandates that FirstEnergy pay this revenue to net generators for their own use, thereby decreasing the amount of funds available for economic development in the state.

{¶17} Third, the Universal Service Fund rider required by R.C. 4928.52 "shall" be a rider on all retail electric distribution service rates. R.C. 4928.52(A). The statute requires that the USF rider be set in such a manner "so as not to shift among the customer classes of electric distribution utilities the costs of funding low-income customer assistance programs." R.C. 4928.52(C). Not only does the commission's order prevent FirstEnergy from collecting this revenue from net generators, it also mandates that FirstEnergy pay this revenue to net generators for their own use.

**{¶18}** Fourth, transmission, distribution, and ancillary services charges in a FirstEnergy rate schedule are designed to compensate it for the cost of facilities and other costs incurred in providing those services. See R.C. 4928.34(A)(1) through (3); R.C. 4928.01(A)(1); Ohio Adm.Code 4901:1-20-03(C)(2). A customer-generator, whether a net consumer or a net generator, incurs none of these costs. The customer-generator provides no facilities or equipment to support the utility distribution or transmission system. Instead, it relies on the utility's facilities to feed back the electricity produced. Nevertheless, the commission's order directs FirstEnergy to pay net generators for the costs FirstEnergy incurs in transmitting and distributing the net amount of electricity the generator supplies to FirstEnergy.

IV

Conclusion

**{¶19}** Based on the foregoing, we hold that FirstEnergy's August Rider, unmodified as to its net-generator provisions, complied with applicable statutory requirements and the commission's net-metering rule and that the commission's order to modify its net-generator provisions was unlawful and unreasonable under R.C. 4903.13. Therefore, we reverse the order of the commission and remand with instructions that the commission approve FirstEnergy's August Rider without modification of its net-generator provisions.

Order reversed

and cause remanded.

MOYER, C.J., DOUGLAS, F.E. SWEENEY, PFEIFER, M.L. RESNICK and LUNDBERG STRATTON, JJ., concur.

MELVIN L. RESNICK, J., of the Sixth Appellate District, sitting for COOK, J.

—————————

Arthur E. Korkosz, Stephen L. Feld and James W. Burk; Calfee, Halter & Griswold, L.L.P., and James F. Lang, for appellants.

Betty D. Montgomery, Attorney General, Section Chief Duane William Luckey, William L. Wright and Thomas G. Lindgren, Assistant Attorneys General, for appellee.

Kelso Starrs & Associates and Thomas J. Starrs, urging affirmance for amici curiae American Solar Energy Society, American Wind Energy Association, and Solar Energy Industries Association.

David C. Rinebold, urging affirmance for amicus curiae Ohio Partners for Affordable Energy.

William Ondrey Gruber, urging affirmance for amicus curiae Ohio Environmental Council.

Robert S. Tongren, Ohio Consumers' Counsel, and Colleen L. Mooney, Assistant Consumers' Counsel, urging affirmance for amicus curiae Ohio Consumers' Counsel.

_____