**DOE ET AL., APPELLANTS, *v.* MARLINGTON LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, APPELLEE, ET AL.**

**[Cite as *Doe v. Marlington Local School Dist. Bd. of Edn.,***

**122 Ohio St.3d 12, 2009-Ohio-1360.]**

*Political subdivision immunity — R.C. 2744.02(B)(1) — The exception to political subdivision immunity in R.C. 2744.02(B)(1) for "negligent operation of any motor vehicle" does not encompass supervision of the conduct of the passengers of the vehicle.*

(No. 2007-1304 — Submitted September 17, 2008 — Decided March 31, 2009.)

APPEAL from the Court of Appeals for Stark County,

No. 2006CA00102, 2007-Ohio-2815.

_____

**SYLLABUS BY THE COURT**

The exception to political subdivision immunity in R.C. 2744.02(B)(1) for "negligent operation of any motor vehicle" does not encompass supervision of the conduct of the passengers of the vehicle.

_____

**CUPP, J.**

{¶ 1} The facts alleged in this case are disturbing. However, this case presents a purely legal issue: whether the immunity granted by R.C. Chapter 2744 applies to bar liability of a school district for negligent supervision of the conduct of children on a school bus. Jane and John Doe, the court-appointed custodians of Holly Roe,[1] a minor, sued the Marlington Local School District Board of

_____

1. The names of the individual plaintiffs, as well as that of "Bob Boe," the boy who was the perpetrator of the actions out of which the case arose, are identified by fictitious names to protect their privacy.

Education and several employees of the school district seeking damages after their daughter was sexually molested by another child on a school bus. The board moved for summary judgment and raised the defense of political subdivision immunity under R.C. Chapter 2744. The trial court denied the board's motion for summary judgment, and the board appealed. The court of appeals reversed, holding that the alleged negligent supervision of the children on the bus did not constitute negligent operation of a motor vehicle within the meaning of R.C. 2744.02(B)(1). We accepted the Does' appeal of that judgment to this court.

**{¶ 2}** We conclude that the appellate court correctly determined that the R.C. 2744.02(B)(1) exception to political subdivision immunity for injuries sustained as a result of the negligent operation of a motor vehicle does not apply to this claim for negligent supervision of the conduct of the children on a school bus. We therefore affirm the court of appeals' judgment.

**I**

*A*

**{¶ 3}** Holly Roe lived within the Marlington Local School District, but she was enrolled as a fourth-grade student at Fairhope Elementary School in the Louisville City School District, where she received special-education services during the 2004-2005 school year. Marlington's school buses for transportation of special-needs students took Roe to and from her school. In the afternoons, Roe rode home on a Marlington bus with three other special-needs students, who were boys enrolled at the Louisville Middle School. Those four students were the only passengers on the bus. Sabrina Wright was the regular bus driver for that route during the afternoons from the third week of September 2004 through mid-November 2004. No bus aide was assigned to that route because, in part, the individualized education programs for the four special-needs students who rode that bus did not require that a bus aide be present. The plaintiffs alleged that Bob Boe, one of the boys on that bus, had exhibited serious behavior problems,

2

including physical and verbal aggression. Marlington asserted that Boe had no history of sexual misconduct that was known to defendants.

{¶ 4} On the March 16, 2005, morning ride, a bus aide saw Bob Boe slumped in his seat next to Roe and discovered that Boe had his hand up Roe's dress. The aide immediately separated the two students. Upon questioning Holly Roe, the bus aide learned that Boe had sexually molested her on the bus that morning. Roe also told the aide that Boe had done similar things "every day on Sabrina Wright's" afternoon school bus. Wright, the driver of the afternoon bus from mid-September 2004 to mid-November 2004, had never witnessed this conduct, and Roe had told no one about it until questioned by the bus aide on March 16, 2005. The afternoon of March 16, 2005, employees of the district notified Jane Doe, Roe's guardian, of what had occurred that day.

{¶ 5} The Does and the school district later learned that on Wright's bus, Roe was sometimes seen on the floor of the bus; Wright thought the students were "playing tag." Wright testified at her deposition that anytime she saw the students "playing tag," Wright told the students to separate and move to another seat on the bus. Boe later pleaded "true" to a delinquency charge of gross sexual imposition in violation of R.C. 2907.05 based on his sexual assault of Roe.

*B*

{¶ 6} The Does, in their own right and on behalf of Roe, sued Marlington Local School District Board of Education, Wright, and Patricia Middleton, the director of transportation for the district, alleging "negligent[], reckless[], and/or wanton[] operat[ion of] a motor vehicle" and that defendants failed to safely transport and supervise Roe and the students on the bus. The board moved for summary judgment, in part claiming that it was entitled to immunity under R.C. 2744.02. The Does opposed the motion for summary judgment.

{¶ 7} The trial court denied the board's motion for summary judgment without opinion. The board appealed that order pursuant to R.C. 2744.02(C),

which provides that "[a]n order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order."

## C

{¶ 8} The court of appeals reversed. The appellate court determined that Sabrina Wright's alleged inadequate supervision of the students on her school bus did not amount to the negligent operation of a motor vehicle within the meaning of R.C. 2744.02(B)(1), so as to avoid the board's immunity from liability under R.C. 2744.02(A)(1). *Doe v. Marlington School Dist. Bd. of Edn.*, 5th Dist. No. 2006CA00102, 2007-Ohio-2815, ¶ 24. The Does sought review in this court, and review was granted on December 26, 2007. 116 Ohio St.3d 1460, 2007-Ohio-6803, 878 N.E.2d 36. On September 15, 2008, this court ordered that argument in the case be limited to the Does' first proposition of law. 119 Ohio St.3d 1456, 2008-Ohio-4656, 893 N.E.2d 847. This court dismisses the appeal as to the Does' second and third propositions of law as having been improvidently accepted. The Does' first proposition of law asserts that a school bus driver's negligent failure to supervise and control obvious misbehavior by students on the school bus constitutes "negligent operation" of the school bus for purposes of R.C. 2744.02(B)(1).

## II

{¶ 9} The issue in this case is whether a school bus driver's supervision of the conduct of children passengers on a school bus amounts to operation of a motor vehicle within the statutory exception to political subdivision immunity under R.C. 2744.02(B)(1). The Does argue that in the context of a school bus, "operation of any motor vehicle" means all of the essential functions that the bus driver is trained or required to do by law. The board, by contrast, argues that even if operating a motor vehicle entails more than just driving the bus, it is still tied to

the movement of the vehicle or the equipment on the bus, and thus operation of the bus does not include the supervision of the conduct of students on board.

*A*

**{¶ 10}** The recognized purpose of R.C. Chapter 2744, the political subdivision immunity law, is the "preservation of the fiscal integrity of political subdivisions." *Wilson v. Stark Cty. Dept. of Human Servs.* (1994), 70 Ohio St.3d 450, 453, 639 N.E.2d 105. R.C. Chapter 2744 was the General Assembly's response to this court's abrogation of governmental immunity for political subdivisions. Id. We bear this legislative purpose in mind as we consider and apply the provisions of R.C. Chapter 2744.

**{¶ 11}** The analysis of the defense of immunity under R.C. Chapter 2744 is a familiar one. First, R.C. 2744.02(A)(1) provides that a political subdivision, like the school district here, is generally immune from liability for damages "for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." Governmental functions include "[t]he provision of a system of public education." See R.C. 2744.01(C)(2)(c). The parties in this court do not contest that transportation of students to and from school on school buses is a governmental function.[2]

**{¶ 12}** Second, a political subdivision has immunity unless one of five statutory exceptions creating liability applies. See R.C. 2744.02(B)(1) through (5).

---

2. See *Doe v. Dayton City School Dist. Bd. of Edn.* (1999), 137 Ohio App.3d 166, 170, 738 N.E.2d 390 ("Because the board was required by law to provide transportation for Doe, the function of providing it was governmental, not proprietary, per R.C. 2744.01(C)(1)"); R.C. 3314.09 ("the board of education of each city, local, and exempted village school district shall provide transportation to and from school for its district's native students"); and R.C. 3327.01("In all city, local, and exempted village school districts where resident school pupils in grades kindergarten through eight live more than two miles from the school for which the state board of education prescribes minimum standards * * * and to which they are assigned by the board of education of the district of residence or to and from the nonpublic or community school which they attend the board of education shall provide transportation for such pupils to and from such school * * *").

Finally, even if a court finds that an exception to immunity applies, the political subdivision's immunity may be reinstated pursuant to R.C. 2744.03(A) if one of the defenses in that section applies. See *Cater v. Cleveland* (1998), 83 Ohio St.3d 24, 28, 697 N.E.2d 610.

{¶ 13} The Does contend that the board of education does not have immunity because of the first exception in R.C. 2744.02(B). The statute provides:

{¶ 14} "Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:

{¶ 15} "(1) Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by *the negligent operation of any motor vehicle* by their employees when the employees are engaged within the scope of their employment and authority." (Emphasis added.)

{¶ 16} The parties do not dispute that Sabrina Wright, the bus driver in question, was acting within the scope of her employment and authority when she drove the school bus on which Boe committed sexual misconduct against Roe. Neither do the parties dispute that a school bus is a "motor vehicle."[3]

*B*

{¶ 17} The resolution of the issue in this case depends on what "operation of" a motor vehicle means in R.C. 2744.02(B)(1). The term "operation" is not defined by R.C. 2744.02.

---

3. For the purpose of R.C. Chapter 2744, a "motor vehicle" has the same meaning as in R.C. 4511.01. R.C. 2744.01(E). R.C. 4511.01(B) defines "motor vehicle" as "every vehicle propelled or drawn by power" with certain exceptions not relevant here.

{¶ 18} The parties agree generally that the term "operation" in R.C. 2744.02(B)(1) should be afforded its plain and ordinary meaning. "The rule is that when the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to apply the rules of statutory interpretation." *State ex rel. Jones v. Conrad* (2001), 92 Ohio St.3d 389, 392, 750 N.E.2d 583. However, the parties have a different view of the plain and ordinary meaning of "operation."

{¶ 19} The Does argue that "operation" must be understood in terms of its context and that driving a school bus involves not only driving the vehicle but also supervising the student passengers. The Does rely upon Ohio regulations that require bus drivers to be trained in pupil management, as well as case law from other states, to support their argument that operation of a school bus includes supervision of the students. By contrast, the board contends that the plain meaning of "operation" of a motor vehicle in R.C. 2744.02(B)(1) refers to injuries that occur as a direct result of driving or moving the vehicle and that Ohio appellate courts generally have construed R.C. 2744.02(B)(1)'s immunity exception in that manner.

{¶ 20} One dictionary definition of "operate" is "[t]o control or direct the functioning of." Webster's II New College Dictionary (3d Ed.2005) 786. That definition suggests that "operation," when used in reference to a motor vehicle, pertains to controlling or directing the functioning of the motor vehicle itself as opposed to directing the occupants within the car.

{¶ 21} The Does also point to our decision in *State v. Cleary* (1986), 22 Ohio St.3d 198, 22 OBR 351, 490 N.E.2d 574, to support their interpretation of "operation" of a motor vehicle under R.C. 2744.02(B)(1). *Cleary* addressed the meaning of R.C. 4511.19(A)(1), which prohibits operating a motor vehicle while under the influence of alcohol or a drug of abuse. In *Cleary*, this court held that "operation of a motor vehicle" for the purpose of former R.C. 4511.19 included

sitting in the car with the key in the ignition and the engine running, even though the car was not moving.[4] See id. at paragraph two of the syllabus. The court reasoned that operating a motor vehicle meant more than just driving the car. "A person under the influence of alcohol or any drug of abuse behind the wheel of a motor vehicle is the obvious hazard at which the statute is directed whether the vehicle is stationary or in motion." Id. at 201.

**{¶ 22}** The Does' reliance on *Cleary* is misplaced. *Cleary*'s reading of former R.C. 4511.19, a statute intended to combat the dangers of driving while under the influence of drugs or alcohol, cannot be taken as a license for expanding the meaning of operation of a motor vehicle under R.C. 2744.02(B)(1) to include anything a driver may do while driving, however unrelated the activity is to moving the car. Even in *Cleary*, the acts of putting the key in the ignition and racing the engine were directly related to the physical functioning, or operation of the car and had the potential for causing it to move. The same close relationship does not exist between driving a motor vehicle and supervising the conduct of the passengers in the motor vehicle.

**{¶ 23}** Since *Cleary*, the General Assembly has amended R.C. 4511.01 to add a definition of "operate." Am.Sub.S.B. No. 123, 149 Ohio Laws, Part II, 2467, 2951. R.C. 4511.01(HHH) provides that "operate" means "to cause or have caused movement of a vehicle, streetcar, or trackless trolley."  That statute was in effect at the time of the events that precipitated this case.  Id. at 3216.

**{¶ 24}** Although the R.C. 2744.02(B)(1) exception to immunity for the negligent operation of a motor vehicle predates the General Assembly's addition

---

4.   R.C. 4511.19 has been amended several times since *Cleary* was decided. For example, Am.Sub.S.B. No. 123, 149 Ohio Laws, Part II, 2467, 2958, rewrote R.C. 4511.19(A) to read: "No person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation, any of the following apply:  (1) The person is under the influence of alcohol, a drug of abuse, or a combination of them." The act also added R.C. 4511.194, which prohibits a person from being in physical control of a vehicle while under the influence of alcohol, a drug of abuse, or a combination of them. Id. at 3001.

of R.C. 4511.01(HHH)'s definition of "operate," that definition nevertheless sheds light on the meaning of "operation" in R.C. 2744.02(B)(1). R.C. 2744.01(E) expressly points to R.C. 4511.01 for the definition of "motor vehicle" in R.C. Chapter 2744. The definition of "operate" in R.C. 4511.01 is also useful in gleaning the meaning of "operation" in R.C. 2744.02(B)(1). See, e.g., *Meeks v. Papadopulos* (1980), 62 Ohio St.2d 187, 191-92, 16 O.O.3d 212, 404 N.E.2d 159 ("the General Assembly, in enacting a statute, is assumed to have been aware of other statutory provisions concerning the subject matter of the enactment even if they are found in separate sections of the Code").

{¶ 25} In any event, the definition of "operate" in R.C. 4511.01(HHH) is generally consistent with the interpretation courts have given to "operation" under R.C. 2744.02(B)(1). For example, in *Doe v. Jackson Local School Dist.*, 5th Dist. No. 2006CA00212, 2007-Ohio-3258, 2007 WL 1840864, ¶ 23, the court rejected a claim that the immunity exception for the negligent operation of a motor vehicle included the supervision of students who were passengers in a school minivan. The court noted that while pupil management may well be part of the driver's responsibility, it is a responsibility that is separate and distinct from that of the operation of the motor vehicle. Id. And in *Doe v. Dayton City School Dist. Bd. of Edn.* (1999), 137 Ohio App.3d 166, 738 N.E.2d 390, the court rejected an argument that the alleged negligent supervision of students on a school bus, which failed to prevent a sexual assault of a minor student, amounted to negligent operation of a motor vehicle. Id. at 172. The court reasoned that the student suffered harm as a result of an external factor, the conduct of another student, and that the harm was not directly traceable to the driver's operation of the bus, as required by R.C. 2744.02(B)(1). Id.

{¶ 26} We conclude that the exception to immunity in R.C. 2744.02(B)(1) for the negligent operation of a motor vehicle pertains only to negligence in driving or otherwise causing the vehicle to be moved. The language of R.C.

2744.02(B)(1) is not so expansive that it includes supervising the conduct of student passengers, as alleged in this case.

{¶ 27} This is not to say that supervision of students may not be a part of a school bus driver's duties. As the Does point out, the Ohio school-bus-driver training requirements include instruction in pupil management. See Ohio Adm.Code 3301-83-10(A)(2)(f) (minimum school-bus-driver training requirements include pupil management) and 3301-83-10(B)(7) (annual inservice training for school bus drivers includes pupil management). However, it does not follow that every duty required of a school bus driver, or for which the driver is trained, constitutes operation of the school bus within the meaning of R.C. 2744.02(B)(1). The Ohio regulations also require school bus drivers to be trained in public relations, Ohio Adm.Code 3301-83-10(A)(2)(b), and the "[u]se of first aid and blood borne pathogens equipment," Ohio Adm.Code 3301-83-10(A)(2)(h). No one has yet seriously contended that "public relations" is part of operating a school bus.

{¶ 28} Because the Ohio statute forecloses the Does' contention that the immunity exception in R.C. 2744.02(B)(1) applies, we do not find the Does' citations of cases from other states interpreting the meaning of operation of a motor vehicle in those states' immunity statutes persuasive. The Does have not cited any cases that held that operation of a motor vehicle, as the phrase is used in governmental-immunity statutes, includes negligent supervision of students on a school bus that fails to prevent the assault of one student by another. Cf. *Stockwell v. Regional Transp. Dist. of Denver* (Colo.App.1997), 946 P.2d 542, 544 (rejecting claim that injuries suffered by a bus passenger who was beaten by other passengers on public transportation resulted from operation of a motor vehicle within the meaning of Colorado's governmental-immunity statute); *Chandler v. Muskegon* (2002), 467 Mich. 315, 321, 652 N.W.2d 224 (the operation of a motor

vehicle under Michigan governmental-immunity statute "encompasses activities that are directly associated with the driving of a motor vehicle").

{¶ 29} While the facts alleged in this case are distressing, the plain language of R.C. 2744.02(B)(1)'s exception to political subdivision immunity for the negligent operation of a motor vehicle does not include within its scope the negligent supervision of the conduct of students on a school bus as alleged here. It is our duty to apply the statute as the General Assembly has drafted it; it is not our duty to rewrite it. See, e.g., *Bd. of Edn. of Pike-Delta-York Local School Dist. v. Fulton Cty. Budget Comm.* (1975), 41 Ohio St.2d 147, 156, 70 O.O.2d 300, 324 N.E.2d 566 ("Courts do not have the authority to ignore, in the guise of statutory interpretation, the plain and unambiguous language in a statute. * * * The remedy desired by appellants from this court must be obtained from * * * the General Assembly").

## III

{¶ 30} Accordingly, we hold that the exception to political subdivision immunity in R.C. 2744.02(B)(1) for the "negligent operation of a motor vehicle" does not encompass supervision of the conduct of the passengers in the vehicle.

{¶ 31} The judgment of the court of appeals is affirmed.

Judgment affirmed.

MOYER, C.J., and LUNDBERG STRATTON, O'DONNELL, and LANZINGER, JJ., concur.

PFEIFER, J., dissents.

O'CONNOR, J., dissents without opinion.

_____

**PFEIFER, J., dissenting.**

## I

{¶ 32} Ohio parents will be startled to learn that school bus drivers in this state have but one responsibility: don't crash the bus. A school bus can become

"Lord of the Flies" on wheels, but apparently as long as the driver maintains an assured clear distance from other drivers, a school board faces no liability for what happens inside. It turns out that the school bus driver's cargo is no more precious than that of the garbage truck driver. Just don't crash the bus!

{¶ 33} I would hold that "operation" of a school bus pursuant to R.C. 2744.02(B)(1) includes attention to student safety. The majority writes that "the exception to immunity in R.C. 2744.02(B)(1) for the negligent operation of a motor vehicle *pertains only to negligence in driving or otherwise causing the vehicle to be moved*." However, R.C. 2744.01(B)(1) does not refer to "driving" – it refers to "operation." I would hold that "operation" of a motor vehicle includes "driving" but also includes other activities relevant to the general purpose of the vehicle.

{¶ 34} The Ohio Administrative Code distinguishes between "driving" a school bus and "operating" a school bus; in the code, "driving" a bus is only one aspect of "operating" a bus. Before a bus driver may "*operat*[*e*] a school bus with pupils on board," he or she must complete training that includes "[*d*]*riving* the bus" but also includes "[p]upil management." (Emphasis added.) Ohio Adm.Code 3301-83-10(A)(2)(d) and (f). Before "*operating* a bus with pre-school and special needs children on board," the driver must receive training in "[a]ppropriate behavior management." (Emphasis added.) Ohio Adm.Code 3301-83-10(A)(3)(a). Throughout Ohio Adm.Code 3301-83-10, in regard to driver-training requirements, annual inservice training, and certification renewal, *driving* is treated as only one part of *operating* a school bus.

{¶ 35} The court in *Groves v. Dayton Pub. Schools* (1999), 132 Ohio App.3d 566, 725 N.E.2d 734, recognized that there is more to the operation of a school bus than driving. In *Groves*, a disabled student alleged that she had suffered injuries as a result of a district bus driver's negligence in failing to secure her in her wheelchair when helping her off the bus. The court held that assisting a

handicapped student off the bus was part of a bus driver's duties and could be found by a jury to be part of "operating" the school bus for purposes of R.C. 2744.02(B)(1). Id. at 570, 725 N.E.2d 734.

{¶ 36} Every child, parent, and school administrator knows that there is much more to a bus driver's operation of a school bus than driving. Whether the driver in this case was negligent should be an issue for the trier of fact. This case is about more than whether the Marlington school board is liable; it is about whether a school board can *ever* be liable for anything that happens on a school bus. The injurious activities in this case were apparently surreptitious. But the holding today would apply to cases where the abuse was visible. It would apply to cases where a child was screaming for help. It would apply to cases where a bus driver allowed strange adults onto the bus. As long as the driver drove safely, the school district would be immune.

{¶ 37} To be sure, operating a school bus is complex. But R.C. 2744.02(B)(1) refers to the operation of *any* motorized vehicle, without regard to the inherent complexities of operating any particular type of vehicle. The exception from immunity contained in R.C. 2744.02(B)(1) should apply to all aspects of operating a school bus.

## II

{¶ 38} As I wrote in *Garrett v. Sandusky* (1994), 68 Ohio St.3d 139, 144, 624 N.E.2d 704 (Pfeifer, J., concurring), "Governmental immunity, including municipal immunity, is contrary to the clear meaning and mandate of the Ohio Constitution." Sovereign immunity is not rooted in the Ohio Constitution; it was originally a creation of the common law. In *Haverlack v. Portage Homes, Inc.* (1982), 2 Ohio St.3d 26, 2 OBR 572, 442 N.E.2d 749, this court abrogated the common-law doctrine of sovereign immunity for political subdivisions, so the General Assembly responded by imposing sovereign immunity by statute. R.C. 2744.01 et seq. But any statute purporting to grant immunity to political

subdivisions violates Section 16, Article I of the Ohio Constitution, and its grant of a right to a remedy to any injured citizen:

{¶ 39} "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay."

{¶ 40} As it stands, the General Assembly's virtual proclamation in R.C. 2744.01 et seq. that "the King can do no wrong" leaves certain profoundly injured Ohioans with no remedy in court, in direct defiance of Section 16, Article I of the Ohio Constitution.  As George Bernard Shaw once said, "Kings are not born: they are made by artificial hallucination."  Or in this case, by statute.

_____

Hill Hardman Oldfield, L.L.C., John F. Hill, and Joy Malek Oldfield, for appellants.

Britton, Smith, Peters & Kalail Co., L.P.A., David Kane Smith, Krista K. Keim, and Sherrie C. Massey; and Mary Jo Shannon Slick, for appellees.

Harry B. Keith, urging reversal for amicus curiae Ohio Legal Rights Service.

Tzangas, Plakas, Mannos & Raies, Ltd., Denise K. Houston, and Edmond J. Mack, urging reversal for amici curiae Ohio Coalition for the Education of Children with Disabilities, Children's Defense Fund, Equal Justice Foundation, and Ohio Association for Justice.

Means, Bichimer, Burkholder & Baker Co., L.P.A., Nicole M. Donovsky, and Richard W. Ross, urging affirmance for amicus curiae Ohio School Boards Association.

_____