Kennedy, J., concurring.
{¶ 31} I agree with and join the majority opinion's analysis applying the plain meaning of the word "amendment" as well as its conclusion that the appellants in this case were prejudiced when the Power Siting Board extended the certificate issued to Black Fork Wind Energy, L.L.C., to construct a wind farm without first requiring Black Fork to file an application to amend the certificate. I write *190 separately, however, to explain why R.C. 4906.06 applies to Black Fork's request for a two-year extension of the time to commence construction of its project and to respond to the dissenting opinion's position that R.C. 4906.07(B) supports its view that an "amendment" of a certificate is at issue only when there is a proposed change in the facility.
{¶ 32} This case presents a straightforward question of statutory interpretation. Our duty in construing a statute is to determine and give effect to the intent of the General Assembly as expressed in the language it enacted. Griffith v. Aultman Hosp. , 146 Ohio St.3d 196, 2016-Ohio-1138, 54 N.E.3d 1196, ¶ 18 ; Fisher v. Hasenjager , 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, ¶ 20. A court therefore cannot insert language into a statute under the guise of statutory interpretation. Doe v. Marlington Local School Dist. Bd. of Edn. , 122 Ohio St.3d 12, 2009-Ohio-1360, 907 N.E.2d 706, ¶ 29. Instead, when the language of a statute is plain and unambiguous and conveys a clear and definite meaning, our role is to apply it as written. Pelletier v. Campbell , 153 Ohio St.3d 611, 2018-Ohio-2121, 109 N.E.3d 1210, ¶ 14.
{¶ 33} R.C. 4906.06(A) provides that an applicant seeking a certificate of environmental compatibility and public need for construction, operation, and maintenance of a "major utility facility" from the board shall file an application "in such form as the board prescribes." This statute requires the application to contain information describing the facility, a summary of environmental-impact studies conducted, and a statement explaining the need for the facility, why the proposed location is best, and how the facility fits into the applicant's forecast report submitted under R.C. 4935.04. The applicant can include any other relevant information.
{¶ 34} R.C. 4906.06 also includes a provision governing the amendment of a certificate. R.C. 4906.06(E) states, "An application for an amendment of a certificate shall be in such form and contain such information as the board prescribes. Notice of such an application shall be given as required in divisions (B) and (C) of this section." Pursuant to this authority, the board has promulgated an administrative rule requiring the application to be submitted in the same form and reviewed in the same manner as an application for a certificate.
*797 Former Ohio Adm.Code 4906-5-10(B), 2008-2009 Ohio Monthly Record 2-4257, effective June 19, 2009, is the rule applicable here; see also Ohio Adm.Code 4906-3-11(B), effective December 11, 2015.
{¶ 35} At issue in this case is whether Black Fork could seek a two-year extension of the time for it to commence construction of the facility by filing a motion or whether it was required to apply for an amendment of the certificate in order to extend it.
*191 {¶ 36} Relevant here, R.C. 4906.06(A) states that "[t]he application shall be filed not more than five years prior to the planned date of commencement of construction. The five-year period may be waived by the board for good cause shown." The date of commencement becomes a condition of the certificate, and here, condition No. 70 of the certificate as stipulated by the parties (and later adopted by the board) provides that the certificate "shall become invalid if the Applicant has not commenced a continuous course of construction of the proposed facility within five (5) years of the date of journalization of the certificate."
{¶ 37} Therefore, the obligation to "commence[ ] a continuous course of construction" within five years from the date the certificate was journalized is an express condition of the certificate, and because the motion for a two-year extension of the time for commencement of construction of the facility sought to amend that certificate, Black Fork was required to file an application for amendment in accord with R.C. 4906.06. Only after Black Fork first filed an application to amend the certificate in compliance with R.C. 4906.06 would R.C. 4906.07(B) then be applicable, but the latter statute governs only the board's consideration of whether it is required to hold a hearing similar to a hearing on an application for a certificate. The board therefore erred when it amended the certificate by granting Black Fork's motion without complying with the proper procedure.
{¶ 38} The dissenting opinion, however, focuses on R.C. 4906.07(B) as establishing a limitation on what types of modifications to a certificate amount to an "amendment" that must be requested through the filing of an application. That statute establishes guidelines for conducting a hearing and investigating applications for a certificate and for an amendment to a certificate:
(A) Upon the receipt of an application complying with section 4906.06 of the Revised Code, the power siting board shall promptly fix a date for a public hearing thereon, not less than sixty nor more than ninety days after such receipt, and shall conclude the proceeding as expeditiously as practicable.
(B) On an application for an amendment of a certificate, the board shall hold a hearing in the same manner as a hearing is held on an application for a certificate if the proposed change in the facility would result in any material increase in any environmental impact of the facility or a substantial change in the location of all or a portion of such facility other than as provided in the alternates set forth in the application.
(C) The chairperson of the power siting board shall cause each application filed with the board to be investigated and shall, not less than fifteen days prior to the date any application is set for hearing submit a written *192 report to the board and to the applicant. A copy of such report shall be made available to any person upon request. Such report shall set forth the nature of the *798 investigation, and shall contain recommended findings with regard to division (A) of section 4906.10 of the Revised Code and shall become part of the record and served upon all parties to the proceeding.
R.C. 4906.07.
{¶ 39} The dissent reasons that because R.C. 4906.07(B) requires a hearing only when "the proposed change in the facility" would materially increase the facility's environmental impact or substantially change its location, the General Assembly must have intended that a certificate holder must file an application for amendment of a certificate only when the certificate holder proposes changes to the facility.
{¶ 40} The problem with that analysis, however, is that the legislature did not hide substantive limitations on the amendment of a certificate in a provision that specifically addresses when "the board shall hold a hearing," R.C. 4906.07(B), and nothing more. Rather, a legislature "is generally presumed to act intentionally and purposely when it includes particular language in one section of a statute but omits it in another." NACCO Industries, Inc. v. Tracy , 79 Ohio St.3d 314, 316, 681 N.E.2d 900 (1997). This is so, because the General Assembly must be presumed "to know the meaning of words, to have used the words of a statute advisedly and to have expressed legislative intent by the use of the words found in the statute * * * and * * * the court may write no limitations therein." Wachendorf v. Shaver , 149 Ohio St. 231, 237, 78 N.E.2d 370 (1948).
{¶ 41} Applying these cardinal principles of statutory construction reveals that R.C. 4906.07(B) simply distinguishes a category of applications to amend a certificate-those proposing a change in the facility-in which a hearing similar to the one required to be held upon an initial application may not be required. It does not demonstrate the legislative intent to limit the types of changes that constitute an "amendment" generally. Otherwise, the General Assembly would have also defined "amendment" to mean "a proposed change in the facility" or included similar language in R.C. 4906.06(E) to require a certificate holder to file an application for an amendment only when the certificate holder proposes changes to the facility. It did not, but rather it provided more general language regarding "[a]n application for an amendment of a certificate." To accept the dissent's view would therefore require adding language to R.C. 4906.06(E) to specify "[a]n application for an amendment of a certificate proposing a change in the facility ." But we may not, in the guise of statutory construction, add limiting language to a statute when the General Assembly did not enact that limitation, Doe , 122 Ohio St.3d 12, 2009-Ohio-1360, 907 N.E.2d 706, at ¶ 29.
*193 {¶ 42} To support its position, the dissenting opinion notes that its view is consistent with the board's interpretation of R.C. 4906.07(B) -and the board itself argues that we are obliged to give "great respect and great weight" to its interpretation of the relevant statutes. Our caselaw recognizes that we may rely on the board's expertise in interpreting a law when "highly specialized issues" are involved and when "agency expertise would, therefore, be of assistance in discerning the presumed intent of our General Assembly." Consumers' Counsel v. Pub. Util. Comm. , 58 Ohio St.2d 108, 110, 388 N.E.2d 1370 (1979). And we have recognized that "[d]ue deference should be given to statutory interpretations by an agency that has accumulated substantial expertise and to which the General Assembly has delegated enforcement responsibility."
*799 Weiss v. Pub. Util. Comm. , 90 Ohio St.3d 15, 17-18, 734 N.E.2d 775 (2000), citing Collinsworth v. W. Elec. Co. , 63 Ohio St.3d 268, 272, 586 N.E.2d 1071 (1992).
{¶ 43} But here, the issue before us is neither highly specialized nor one related to the board's enforcement responsibility but rather requires us to engage in a familiar function-statutory construction-in which we apply fundamental principles. And because the interpretation of a statute is a question of law, we review the board's interpretation de novo and without deference. Stewart v. Vivian , 151 Ohio St.3d 574, 2017-Ohio-7526, 91 N.E.3d 716, ¶ 23. Not only does deferring to the board's construction of R.C. 4906.07(B) abdicate our function and responsibility as members of the judiciary to "say what the law is," Marbury v. Madison , 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803), but also when we defer to an administrative agency's interpretation of the law in the type of situation presented here, "we abandon our role as an independent check on the executive branch." State ex rel. McCann v. Delaware Cty. Bd. of Elections , 155 Ohio St.3d 14, 2018-Ohio-3342, 118 N.E.3d 224, ¶ 31 (DeWine, J., concurring in judgment only).
{¶ 44} Moreover, the dissenting opinion would rely on the board's "established administrative practice of considering certificate extensions based on motions rather than on amendment applications," noting that " 'long-standing administrative interpretations are entitled to special weight,' " dissenting opinion at ¶ 59, quoting Cleveland v. Pub. Util. Comm. , 67 Ohio St.2d 446, 451, 424 N.E.2d 561 (1981). Likewise, the board urges that we should not overturn its "practice interpreting its enabling statutes." However, such deference would disregard the legislative checks imposed on agency rulemaking. The General Assembly has delegated to the board the authority to draft rules that have the force of law. R.C. 4906.03. But the legislature has not written the board a blank check-it has retained oversight of agency rulemaking. A proposed rule "is subject to legislative review and invalidation under sections 106.02, 106.021, and 106.022 of the Revised Code," and it must be filed with the Joint Committee on Agency Rule Review ("JCARR"). R.C. 119.03(C). Members of the House of Representatives *194 and the Senate serve on JCARR, and it may recommend that the House and Senate adopt a concurrent resolution to invalidate the proposed rule. R.C. 106.021 ; R.C. 106.041. By reserving the authority to adopt such an invalidating concurrent resolution, the General Assembly retains a legislative veto over agency rulemaking. R.C. 106.042. That oversight is lost if, as the dissent and the board contend, the board's practice controls the inquiry in the situation here.
{¶ 45} In any case, an agency cannot change the meaning of a statute or a rule simply by misapplying it repeatedly; because an agency has no authority beyond that which is conferred by statute, it cannot-through an errant course of practice-grant itself power withheld by the General Assembly. See State ex rel. Lucas Cty. Bd. of Commrs. v. Ohio Environmental Protection Agency, 88 Ohio St.3d 166, 171, 724 N.E.2d 411 (2000). Rather, this court since 1917 has recognized that the authority of an administrative agency is limited to those powers granted to it by statute:
In construing such grant of power, particularly administrative power through and by a legislative body, the rules are well settled that the intention of the grant of power, as well as the extent of the grant, must be clear; that in case of doubt that doubt is to be resolved, not in favor of the grant, but against it. It is one of the reserved powers that the legislative *800 body no doubt had, but failed to delegate to the administrative board or body in question.
State ex rel. A. Bentley & Sons Co. v. Pierce, 96 Ohio St. 44, 47, 117 N.E. 6 (1917) ; accord D.A.B.E., Inc. v. Toledo-Lucas Cty. Bd. of Health , 96 Ohio St.3d 250, 2002-Ohio-4172, 773 N.E.2d 536, ¶ 40.
{¶ 46} Here, no statute gives the board authority to modify the certificate by granting Black Fork's motion. Rather, the only method specified by the relevant statute, R.C. 4906.06(E), for modifying a certificate is for the certificate holder to file an application for an amendment. If the dissent is correct that an "amendment" is at issue only when there is a proposed change in the facility, then there is no authority in R.C. Chapter 4906 for the board to modify any other conditions of the certificate. That view, however, cannot be squared with the broad language of R.C. 4906.06(E).
{¶ 47} Contrary to the dissent's reasoning, it does not make sense to require the same public notice, investigation, and review as that applicable to an initial application when a certificate holder proposes some change to the facility-regardless of how material the change is-but then to permit modification of all of the other substantive conditions of a certificate by granting a certificate holder's motion without complying with any of the procedural safeguards mandated *195 for granting a certificate in the first instance. There is no indication that the legislature intended to dispense with notice to stakeholders and the investigation required by statute when the board considers a substantive modification to the certificate, regardless of whether the certificate holder proposes a change in the facility or proposes to amend a condition of the certificate. And the dissenting opinion's position that the board's interpretation of R.C. 4906.07(B) must be correct because, if it is not, correcting a clerical error would require the certificate holder to file an application to amend the certificate is not persuasive; an application for an amendment is required to be filed only when the proposed change to the certificate amounts to an "amendment" of it.
{¶ 48} By deferring to the board's interpretation of law and past practice, the dissent disregards the judicial and legislative checks on the executive branch that are essential to our tripartite form of state government. A majority of this court therefore correctly rejects the dissent's reasoning.
DeWine, J., concurs in the foregoing opinion.