[Cite as *Musson v. Newton Falls*, 2026-Ohio-1115.]

# IN THE COURT OF APPEALS OF OHIO
# ELEVENTH APPELLATE DISTRICT
# TRUMBULL COUNTY

| | |
|---|---|
| ANNA M. MUSSON, | CASE NO. 2025-T-0019 |
| Plaintiff-Appellee, | |
| - vs - | Civil Appeal from the Court of Common Pleas |
| CITY OF NEWTON FALLS, et al., | |
| Defendants-Appellant. | Trial Court No. 2023 CV 01093 |

## OPINION AND JUDGMENT ENTRY

Decided: March 30, 2026
Judgment: Affirmed

*Jerome T. Linnen, Jr.,* Linnen Co., L.P.A., 789 West Market Street, Akron, OH 44303 (For Plaintiff-Appellee).

*R. Eric Smearman* and *Caitlin M. Thompson,* Smearman Marshall, L.L.C., 7251 Engle Road, Suite 404, Middleburg Heights, OH 44130 (For Defendant-Appellant).

MARK A. HANNI, Seventh District Judge sitting by assignment.

{¶1} Defendant-Appellant, the City of Newton Falls (the City), appeals from a Trumbull County Common Pleas Court judgment finding it was not entitled to political subdivision immunity on Plaintiff-Appellee's, Anna M. Musson, claims for intentional infliction of emotional distress and negligent hiring, supervision, training, and retention. This appeal deals solely with the issue of whether the City is entitled to the affirmative defense of political subdivision immunity. Because the trial court correctly found the City was not entitled to immunity on these claims, the judgment is affirmed.

{¶2} Musson was employed as the City's finance director from July 11, 2016 until her termination on October 11, 2021.

**{¶3}** Musson and the City entered into a contract to run from December 1, 2020 through November 30, 2024, with annual compensation of $72,500 (the contract). The terms of the contract provided in relevant part:

> Either party may terminate this agreement upon thirty days written notice. If the City terminates this agreement the Finance Director shall be entitled to a minimum severance payment, equal to an amount equal to the total due for the remaining months left in this contract, unless termination is due to conviction for a felony.

(Employment Agreement, Section 2: Term). At the time of Musson's termination, just over three years remained on the contract.

**{¶4}** In her role as finance director, Musson reported to City Manager David Lynch. But Lynch did not have the authority to terminate Musson. Any termination was up to city council.

**{¶5}** The facts from this point on are somewhat vague and largely disputed.

**{¶6}** According to Musson, on May 4, 2021, she informed Lynch that the Ohio Auditor's Officer was instituting an investigation of City finances. On May 6, Musson met with the City's law director and discussed matters including improper expenditures by the City, audit issues, and the potentially illegal conduct of an employee. The next day, Lynch placed Musson on paid administrative leave. Lynch requested that Musson undergo medical and psychological evaluations. On June 13, Lynch changed Musson's administrative leave from paid to unpaid when she refused to undergo the evaluations Lynch requested. According to Musson, Lynch then obtained copies of audio recordings from Musson's ex-husband dating back ten years, when Musson and her husband were still married. Lynch put these recordings of Musson's marital conversations in her employment file. Musson stated these recordings were then made available and played for her subordinates. Lynch also wrote a 13-page report incorporating conversations he had with others regarding Musson, attacking Musson's employment, and accusing Musson of having "severe psychiatric, potentially homicidal tendencies." During this time, Lynch was acting in his capacity as City Manager. While Lynch labeled the report "confidential", it was nonetheless disseminated by email and social media to the public.

{¶7} According to the City, there was significant conflict between Musson and the employees she supervised. The employees turned to Lynch with their complaints of a hostile work environment. Lynch eventually requested that Musson undergo medical and psychological evaluations to determine if she was fit for work. Lynch placed Musson on paid administrative leave on May 7, 2021. When Musson refused to attend the evaluations, Lynch placed her on unpaid administrative leave. Around this time, Lynch prepared a "confidential report" on Musson for distribution to City Council. Lynch stated the purpose of the confidential report was to explain his reasons for placing Musson on administrative leave.

{¶8} City Council terminated Lynch as the City Manager on August 8, 2021.

{¶9} On October 11, 2021, the City terminated Musson's employment. There is no evidence that the City gave Musson 30-days' notice as required by the contract. Likewise, there is no suggestion that Musson was convicted of a felony, which would have excused any severance payment under the contract.

{¶10} On July 24, 2023, Musson filed a complaint against the City asserting claims for declaratory judgment (Count I), breach of contract (Count II), intentional infliction of emotional distress (Count III), negligent hiring, supervision, training, and retention (Count IV), promissory estoppel (Count V), and defamation (Count VI). The complaint also named Lynch as a defendant on the counts for intentional infliction of emotional distress and defamation. In its answer, the City raised the affirmative defense of political subdivision immunity. Lynch also added this affirmative defense in his second amended answer.

{¶11} Musson filed a motion for partial summary judgment on January 24, 2025. She requested summary judgment on Counts I and II; her right to prejudgment interest; and a finding that the affirmative defense of political subdivision immunity did not prevent her tort claims in Counts III, IV, and VI. As to political subdivision immunity, Musson argued the exception to immunity for matters arising out of the employment relationship between the employee and the political subdivision applies here.

{¶12} The City filed a motion for summary judgment on January 27, 2025. In pertinent part, the City argued it was entitled to summary judgment on the tort claims based on political subdivision immunity. It argued that in order for a political subdivision

Case No. 2025-T-0019

to be liable for the acts of one of its employees, the employee must have been acting within the scope of his employment. But when the tort is intentional (as alleged in the claim for intentional infliction of emotional distress), the employee's acts would necessarily fall outside of the scope of employment.

{¶13} That same day, Lynch also filed a motion for summary judgment asserting that he was an employee of the City at all times and, therefore, was entitled to political subdivision immunity as well.

{¶14} On April 1, 2025, the trial court issued a judgment as follows. It granted summary judgment in favor of Musson on her declaratory judgment claim (Count I) declaring a City ordinance unconstitutional. It granted summary judgment in favor of Musson on Count II (breach of contract). It granted summary judgment in favor of the City and Lynch on Count VI (defamation), finding this claim to be time-barred by the statute of limitations.

{¶15} The trial court denied the City's and Lynch's motion for summary judgment on the remaining claims – Count III (intentional infliction of emotional distress), Count IV (negligent hiring, supervision, training, and retention), and Count V (promissory estoppel). The court found that genuine issues of material fact existed as to these claims and the matter would proceed to a jury trial. As to the City's and Lynch's asserted immunity defense on the tort claims, the trial court found that because the alleged misconduct arose out of the employment relationships between the City and Musson, the City was excepted from immunity under R.C. 2744.09(B).

{¶16} The City filed a timely notice of appeal on April 7, 2025. Lynch also filed a notice of appeal. Lynch's appeal is proceeding simultaneously with this appeal in Case No. 25-TR-0018.

{¶17} Generally, a trial court's denial of a summary judgment motion is not a final, appealable order. But in this case, it is a final order. Here, the City's motion for summary judgment was based in part on the premise of governmental immunity. The Ohio Supreme Court has held: "When a trial court denies a motion in which a political subdivision or its employee seeks immunity under R.C. Chapter 2744, that order denies the benefit of an alleged immunity and is therefore a final, appealable order pursuant to R.C. 2744.02(C)." *Hubbell v. City of Xenia*, 2007-Ohio-4839, syllabus. Moreover, "R.C.

2744.02(C) permits a political subdivision to appeal a trial court order that denies it the benefit of an alleged immunity from liability under R.C. Chapter 2744, even when the order makes no determination pursuant to Civ.R. 54(B)." *Sullivan v. Anderson Twp*., 2009-Ohio-1971, ¶ 13.

{¶18} The City now raises two assignments of error for our review alleging that summary judgment in favor of Musson on the issue of immunity was not proper.

{¶19} A court may grant summary judgment only when (1) no genuine issue of material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) the evidence can only produce a finding that is contrary to the non-moving party. *Mercer v. Halmbacher*, 2015-Ohio-4167, ¶ 8 (9th Dist.); Civ.R. 56(C). The initial burden is on the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact as to the essential elements of the case with evidence of the type listed in Civ.R. 56(C). *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). A "material fact" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc*., 104 Ohio App.3d 598, 603 (8th Dist.1995), citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-248 (1986).

{¶20} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher*, 75 Ohio St.3d 280, 296 (1996). The trial court's decision must be based upon "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action." Civ.R. 56(C).

{¶21} The City's first assignment of error states:

THE TRIAL COURT ERRED BY GRANTING APPELLEE'S MOTION FOR PARTIAL SUMMARY JUDGMENT (T.d. 36) AND DENYING APPELLANT'S MOTION FOR SUMMARY JUDGMENT (T.d. 38) AND HOLDING THAT THE MISCONDUCT ALLEGED BY MUSSON ARISES OUT OF THE EMPLOYMENT RELATIONSHIP BETWEEN NEWTON FALLS AND MUSSON AND THEREFORE NEWTON FALLS IS EXEMPTED FROM IMMUNITY UNDER O.R.C. 2744.09(B).

**{¶22}** This assignment of error deals solely with Musson's claim for intentional infliction of emotional distress. In her complaint, Musson alleged the City and Lynch intentionally schemed to inflict emotional distress upon her so that she would resign in order to avoid paying the severance pay set out in the contract. In her motion for summary judgment, Musson argued that because her claim arose from her employment relationship with the City, the City was exempt from immunity under R.C. 2744.09(B). The trial court agreed.

**{¶23}** The City now argues that Musson offered no evidence to support her allegations. It claims she was required to support this claim with proper summary judgment evidence (deposition testimony, affidavits, admissions, etc.). The City cites to case law holding that whether R.C. 2744.09(B) applies depends on if, based on the particular evidence presented in the case, there is a causal connection between the claim and the employment relationship. Citing *Piazza v. Cuyahoga Cnty*., 2019-Ohio-2499, ¶ 24; *Vacha v. N. Ridgeville*, 2013-Ohio-3020, ¶ 19. The City contends that when asked to identify the actions it took to inflict emotional distress upon her, Musson could only state that City employees made statements on Facebook and gossiped about her. It asserts Musson failed to offer evidence that any acts by the City were done with the intention to cause her to resign.

**{¶24}** In reply, Musson argues the City has put forth no evidence in support of its motion for summary judgment factually contesting whether her claims arose out the employment relationship. She points out Lynch stated that at all times relevant to this action he was acting within the scope of his employment. (Lynch Answer, ¶ 2). Musson asserts that Lynch "did everything possible to inflict emotional distress" on her, likely with the goal to cause to her to resign.

**{¶25}** Generally, determining whether a governmental entity is immune from tort liability involves a three-step analysis as set out in R.C. 2744.02 and R.C. 2744.03. The analysis begins with the general rule that political subdivisions are not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function. R.C. 2744.02(A)(1).

**{¶26}** But this case instead involves the application of R.C. 2744.09(B), which provides that R.C. Chapter 2744 does not apply to "[c]ivil actions by an employee . . . against his political subdivision relative to any matter that arises out of the employment relationship between the employee and the political subdivision." R.C. 2744.09(B)'s purpose is to protect public employees by allowing them to recover against their employers, who would otherwise be entitled to immunity under R.C. Chapter 2744. *Vacha*, 2013-Ohio-3020, at ¶ 12, citing *Sampson v. Cuyahoga Metro. Hous. Auth.,* 2012-Ohio-570, at ¶ 13.

**{¶27}** So if an employee's civil action arises out of his or her employment relationship with a political subdivision, the immunity generally conferred on the political subdivision by R.C. 2744.02 does not apply.

**{¶28}** In this case, and specifically in this assignment of error, Musson (an employee) brought a civil claim arising out of the employment relationship (intentional infliction of emotional distress) against her political subdivision employer (the City). Under this scenario, the City is not covered by immunity.

**{¶29}** We must further consider, however, that intentional infliction of emotional distress is an intentional tort.

**{¶30}** In *Sampson,* 2012-Ohio-570, the Ohio Supreme Court analyzed this exception to political-subdivision immunity from tort liability, specifically considering the applicability of R.C. 2744.09(B) to employer-intentional-tort claims by public employees. The Court found that the exception "applies in a civil action for damages filed by an employee who alleges that his political-subdivision employer committed an intentional tort against him and engaged in negligent conduct." *Id.* at ¶ 1. It further held an employee's action against his or her employer "arises out of the employment relationship between the employee and the political subdivision" within the meaning of R.C. 2744.09(B) if there is a "causal connection or a causal relationship" between the employee's claims and the employment relationship. *Id.* at ¶ 17.

**{¶31}** We note again at this point that we are not examining the merits of Musson's intentional infliction of emotional distress claim here. The scope of this appeal is limited to the review of alleged errors in the portion of the trial court's decision that denied the City the benefit of immunity. *See Makowski v. Kohler*, 2011-Ohio-2382, ¶ 7 (9th Dist.),

Case No. 2025-T-0019

citing *Essman v. City of Portsmouth*, 2009-Ohio-3367, ¶ 10 (4th Dist.); *CAC Bldg. Properties v. City of Cleveland*, 2009-Ohio-1786, ¶ 9, fn. 1 (8th Dist.); *Carter v. Complete Gen. Constr. Co.*, 2008-Ohio-6308, ¶ 8 (10th Dist.).

**{¶32}** If there is a genuine issue of material fact as to whether Musson's intentional infliction of emotional distress claim is causally related or connected to her employment relationship, the City is not entitled to summary judgment on the basis of political-subdivision immunity. *Vacha*, 2013-Ohio-3020, at ¶ 25. "That is not to suggest that a political subdivision cannot ultimately demonstrate the absence of the required connection and its entitlement to immunity upon a full presentation of the evidence, despite an earlier denial of summary judgment." *Id*.

**{¶33}** A genuine issue of material fact exists as to whether Musson's claim is related or connected to her employment relationship with the City.

**{¶34}** It is undisputed that at all relevant times Lynch was employed as the city manager. (Lynch Answer, ¶ 4; City Answer ¶ 3).

**{¶35}** In her deposition, Musson stated Lynch caused her emotional distress when he ordered her to undergo physical and psychological evaluations. (Musson dep. 205-206). When she did not comply, Lynch placed Musson on unpaid administrative leave. (Musson dep. 238-239). She stated that Lynch told city council and the public that she was mentally ill. (Musson dep. 240-241). She further stated that Lynch requested and obtained personal recordings from her ex-husband dating back to 2010 dealing with the custody of her child. (Musson dep. 231-232, 241-242). The recordings were then published to Musson's employees. (Musson dep. 241). She stated that her staff later posted messages on Facebook regarding these recordings. (Musson dep. 241-242). Finally, Musson stated that Lynch created a "report" or "dossier" about her that he distributed to city council. (Musson dep. 268-269). This document made numerous allegations regarding Musson's mental health, her previous employment with other cities, and her tumultuous divorce. (Musson dep. Ex. 15). Despite the fact that it was supposed to remain confidential, Musson stated that the report was distributed at a city council meeting to members of the public. (Musson dep. 269). These actions caused Musson to seek treatment from her primary care physician to deal with stress and resulting weight gain. (Musson dep. 212-215, 223-224).

Case No. 2025-T-0019

**{¶36}** Based on the above, there is enough evidence to create a genuine issue of material fact as to whether Musson's intentional infliction of emotional distress claim is causally related or connected to her employment relationship with the City. Thus, the trial court properly denied the City's motion for summary judgment requesting political subdivision immunity on this claim.

**{¶37}** Accordingly, the City's first assignment of error is without merit and is overruled.

**{¶38}** The City's second assignment of error states:

THE TRIAL COURT ERRED IN NOT GRANTING APPELLANT'S MOTION FOR SUMMARY JUDGMENT (T.d. 38) ON THE ISSUE OF IMMUNITY UNDER R.C. 2744.02 ON APPELLEE'S NEGLIGENCE CLAIMS.

**{¶39}** Musson alleged in her complaint that the City was negligent in its hiring, training, supervision, and retention of Lynch. The City, in its motion for summary judgment, argued it was immune from liability on this negligence claim under R.C. 2744.02 pursuant to the three-tier analysis. The trial court did not specifically address this argument.

**{¶40}** Whether a political subdivision is entitled to immunity is generally analyzed using a three-tiered process. *Greene Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 556 (2000). Under the first tier, R.C. 2744.02(A)(1) sets out the general rule that political subdivisions are not liable in damages. *Id.* at 556-557. Under the second tier, the court must determine whether any of the exceptions to immunity set out in R.C. 2744.02(B) apply. *Id.* at 557. Finally, under the third tier, if the court finds that any of R.C. 2744.02(B)'s exceptions apply, the court must then consider R.C. 2744.03, which provides defenses and immunities to liability. *Id.*

**{¶41}** The second tier examines whether any of the five exceptions apply to strip the political subdivision of its immunity. Those exceptions are for injury, loss, or death caused by: (1) negligent operation of any motor vehicle by an employee within the scope of their employment; (2) negligent performance of acts by employees with respect to proprietary functions of the political subdivisions; (3) negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads; (4)

Case No. 2025-T-0019

employee negligence that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function; and (5) civil liability expressly imposed upon the political subdivision by a section of the Revised Code.  R.C. 2744.02(B).

**{¶42}**  The City argues that none of these exceptions to remove its immunity exist in this case.  Musson, on the other hand, asserts the City is overlooking R.C. 2744.09(B).

**{¶43}**  The City relies on the Ohio Supreme Court decision in *McConnell v. Dudley*, 2019-Ohio-4740.  In that case, the Ohio Supreme Court stated:

> [N]egligence (or reckless, wanton, or willful conduct) in hiring, training, and supervising does not fall within the plain language of any of the exceptions established by R.C. 2744.02(B)(1) through (5).  Nothing in the plain language of this statute provides an additional exception that imposes liability on the political subdivision for its actions in hiring, training, or supervising an employee or entrusting him or her with a vehicle, and we may not add it ourselves under the guise of statutory interpretation.  *See Doe* [*v. Marlington Local School Dist. Bd. of Edn*.], 122 Ohio St.3d 12, 2009-Ohio-1360, 907 N.E.2d 706, at ¶ 29.  The township is therefore entitled to summary judgment on the McConnells' claim that the township was "negligent, willful and/or wanton in their hiring, policies and/or training of [Officer] Dudley."

*Id*. at ¶ 30.

**{¶44}**  *McConnell*, however, is distinguishable on its facts from the case at bar. *McConnell* involved a lawsuit by a woman and her family resulting from a traffic collision where a police officer, in pursuit of another vehicle, crashed his police cruiser into the woman's vehicle causing serious injury.  *Id*. at ¶ 6.  The woman and her family filed suit against the police department raising multiple claims, including a claim for negligent training and hiring of the officer involved.  *Id*. at ¶ 7.

**{¶45}**  *McConnell* did not involve an employee-employer relationship.  Instead, it involved a civil action by a private citizen against a political subdivision.  So the general three-tier analysis for determining political subdivision immunity, set out in R.C. 2744.02

Case No. 2025-T-0019

and R.C. 2744.03, applied in that case. The present case, however, involves a civil action by an employee against her political subdivision employer related to a matter that arose out of the employment relationship. Thus, R.C. 2744.09(B) dictates that R.C. Chapter 2744 does not apply here.

{¶46} Therefore, while the trial court did not specifically address this argument, it nonetheless correctly concluded that the City was not entitled to political subdivision immunity on Musson's negligent hiring, training, supervision, and retention claim.

{¶47} Accordingly, the City's second assignment of error is without merit and is overruled.

{¶48} For the reasons stated above, the trial court's judgment is hereby affirmed.

CAROL ANN ROBB, P.J.,

KATELYN DICKEY, J.,

concur.

Case No. 2025-T-0019

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, Appellant's assignments of error are without merit. It is the judgment and order of this court that the judgment of the Trumbull County Court of Common Pleas is affirmed.

Costs to be taxed against Appellant.


JUDGE MARK A. HANNI,
SEVENTH DISTRICT COURT OF APPEALS,
SITTING BY ASSIGNMENT


JUDGE CAROL ANN ROBB,
SEVENTH DISTRICT COURT OF APPEALS,
SITTING BY ASSIGNMENT
concurs


JUDGE KATELYN DICKEY,
SEVENTH DISTRICT COURT OF APPEALS,
SITTING BY ASSIGNMENT
concurs


**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2025-T-0019