City of Cleveland, Appellant, *v.* Public Utilities
Commission of Ohio et al., Appellees.

[Cite as Cleveland v. Pub. Util. Comm. (1981),
67 Ohio St. 2d 446.]

(No. 80-1340—Decided August 5, 1981.)

*Mr. Thomas E. Wagner,* director of law, *Mr. Mark I. Wallach* and *Mr. Craig A. Glazer,* for appellant.

*Mr. William J. Brown,* attorney general, and *Mr. Marvin I. Resnik,* for appellee.

*Messrs. Squire, Sanders & Dempsey, Mr. Alan P. Buchmann* and *Mr. Richard W. McLaren, Jr.,* for intervening appellee Cleveland Electric Illuminating Co.

*Per Curiam.* The threshold issue before this court is whether the street-lighting service is a "new service" within the purview of R. C. 4909.18. That section, in relevant part, provides:

"Any public utility desiring to establish any rate, joint rate, toll, classification, charge, or rental, or to modify, amend, change, increase, or reduce any existing rate, joint rate, toll, classification, charge, or rental, or any regulation or practice affecting the same, shall file a written application with the public utilities commission. * * *If the commission determines that such application is not for an increase in any rate, joint rate, toll, classification, charge, or rental, the commission may permit the filing of the schedule proposed in the application and fix the time when such schedule shall take effect. If it appears to the commission that the proposals in the application may be unjust or unreasonable, the commission shall set the matter for hearing and shall give notice of such hearing by sending written notice of the date set for the hearing to the public utility and publishing notice of the hearing one time in a newspaper of general circulation in each county in the service area affected by the application.* * *"

It is undisputed that CEI has provided street lighting to municipalities within its territory for many years. Based on this finding, appellant argues that there is thus no "new service" involved in this case, and, as such, the commission improperly determined that the application at issue represented an application not for an increase in rates. The commission rejected this proposition: "The service in question is not 'new' in the sense that it was physically different from street lighting

service previously provided. It is 'new' because it was not previously a tariff offering." The commission reasoned that since street-lighting service had long been a matter of contract, the tariff filed with the commission thus constituted a first filing for new service and not an application for an increase in rates.

The commission's interpretation is in accord with the decision in *Cookson Pottery* v. *Pub. Util. Comm* (1954), 161 Ohio St. 498, wherein this court construed G. C. 614-20, the predecessor to R. C. 4909.18. These statutes are substantially similar. Likewise, the facts in *Cookson* are similar to those presented herein, for both involve a change from providing a service by contractual arrangement to providing a service by means of a tariff. When the company in the *Cookson* case filed an application with the commission to establish a schedule governing industrial gas service, the commission accepted the proposed tariff as a first filing. This court found that the commission had acted properly in finding that a "new service" was involved and, at page 507, stated:

"No previous schedule of rates had been filed for approval and none had been approved. *The jurisdiction of the commission in this regard has never previously been invoked* by either the gas company or its customers, and as a result, the filing of the application here in question could not be for an increase in rates. It was in fact, as the record shows, a first and original filing of such an application for approval of a schedule of rates and was properly so treated by the commission." (Emphasis added.)

The court also stated, at pages 504-505, that "an application not involving a rate increase***necessarily includes an application either *to establish for the first time a rate* or to reduce the rate once established. This procedure comprehends 'an original or first filing.' " (Emphasis added.)

The rule, as derived from *Cookson,*[1] is that if there is a first filing involved, it is a "new service" under R. C. 4909.18. See, also, *Cinnamon Lake Utility Co.* v. *Pub. Util. Comm.* (1975), 42 Ohio St. 2d 259.

---

[1] In the recent case of *Consumers' Council* v. *Pub. Util. Comm.* (1980), 64 Ohio St. 2d 71, 73-74, this court recognized that the language in earlier decisions must be viewed in the factual context of those earlier cases.

Appellant asserts that the commission's reliance on *Cookson* as precedent is misplaced. Initially, appellant argues that *Cookson* is inapplicable because amendments have been made to the statute at issue. Appellant has, however, failed to identify how the change in the statute alters the holding in *Cookson* that a first filing, by definition, cannot be an application for an increase in rates. Prior to the 1976 amendment to R. C. 4909.18, the commission, upon a finding that an application was not for an increase in rates, had no alternative but to accept the proposed tariff for filing. The current version of R. C. 4909.18 now vests the commission with discretion in this area, providing that the commission may either permit the filing of the tariffs or set the matter for hearing. The amendment did not affect the determination of what constitutes a "first filing."

Secondly, appellant contends that *Cookson* is distinguishable on its facts in that the industrial customers in that case did not receive an increase from the contract rate under the tariff rate. This court questions this reading but finds this factor irrelevant to the *Cookson* holding, since the court in *Cookson* held there was no application for an increase in rates because the commission's jurisdiction had not been previously invoked by the gas company for this service "and, as a result, the filing of the application here in question *could not be for an increase in rates.*" *Cookson, supra,* at page 507. Appellant, like Cookson Pottery, is simply being asked to pay a rate pursuant to tariff which is more than the rate charged under the prior contractual arrangement. This is not, according to the language in *Cookson,* an application to increase rates pursuant to R. C. 4909.18.

Finally, appellant argues that the street-lighting service in this case had previously been covered by a tariff, and thus the *Cookson* holding is inapplicable. A careful review of the record indicates that this assertion is not supported by the evidence. The chief of the commission's Rates and Tariff Division testified that he had conducted a search and found nothing to indicate that a tariff for street lighting had ever been filed post-1940. CEI's witness, Mr. Bingham, testified initially that he "believed," based on a CEI document, CEI had a tariff with the commission in 1917 for ornamental carbon arc lighting.

The witness later questioned his own belief and testified that "I don't know whether this was ever filed with the PUCO or not." Even if a tariff had been filed with the commission, Bingham testified that it did not apply to the kind of service offered by the current tariff.

Based on the foregoing, this court finds that the commission's reliance on *Cookson* was well placed. In light of the finding that the application at issue was for new service and not for an increase in any existing tariff, this court will now consider the issues raised by appellant regarding notice and hearing requirements.

Appellant claims that proper notice procedures were violated in three principal ways. Appellant's argument as to the requirement of publication of the substance and prayer of the application is without merit.[2] Publication is required only in rate increase cases. R. C. 4909.19.[3] Since this court has found that the application at issue did not involve an application to increase rates, CEI was not required to make such a publication in this case.

Appellant also asserts that service of written notice no later than 90 days before the filing of the application on the mayor and city council was required by R. C. 4909.43(B).[4] The

---

[2] Appellant's use of *Committee Against MRT* v. *Pub. Util. Comm.* (1977), 52 Ohio St. 2d 231, as authority is misplaced. This case involved an existing service, offered under an existing tariff, for which the utility sought to change the method by which it charged customers for its service. A new service offering was not involved in that case as it is in the case at bar.

[3] R. C. 4909.19 provides, in pertinent part, that "[u]pon the filing of any application for increase * * * the public utility shall forthwith publish the substance and prayer of such application * * *."

[4] R. C. 4909.43 provides:

"(A) No public utility shall file a rate increase application covering a municipal corporation pursuant to section 4909.18 or 4909.35 of the Revised Code at anytime prior to six months before the expiration of an ordinance of that municipal corporation enacted for the purpose of establishing the rates of that public utility.

commission asserts that this requirement is only applicable to rate increase applications.

It must be noted at the outset that the commission stated in its October 5th order that its administrative interpretation of R. C. 4909.43 has consistently been that the 90-day notice provision is applicable only to applications for increase in rates.[5] This court has long recognized that long-standing administrative interpretations are entitled to special weight. See, *e.g., Indus. Comm.* v. *Brown* (1915), 92 Ohio St. 309, 311. See, also, *State, ex rel. Automobile Machine Co.,* v. *Brown* (1929), 121 Ohio St. 73, 75-76; and *State, ex rel. Schweinhagen,* v. *Underhill* (1943), 141 Ohio St. 128, 131-132.

The commission's position is supported by the policies stated by this court in *Ohio Bell Telephone Co.* v. *Pub. Util. Comm.* (1969), 17 Ohio St. 2d 45. In that case, this court recognized that the legislative scheme is to provide speedy implementation of rate reductions and new service offerings, both of which are applied for under R. C. 4909.18.[6]

To require the 90-day notice would deter this policy. The value of the 1976 amendment to R. C. 4909.18 (which was part of the same legislation which created R. C. 4909.43) was to retain the ability to immediately implement new service offerings while giving the commission a certain degree of discretion

"(B) Not later than ninety days prior to the filing of an application pursuant to section 4909.18 or 4909.35 of the Revised Code, a public utility shall notify, in writing, the mayor and legislative authority of each municipality included in such application of the intent of the public utility to file an application, and of the proposed rates to be contained therein."

[5] The commission stated in its October 5th order that it has approved numerous applications not for an increase in rates since the 1976 effective date of R. C. 4909.43(B) without requiring adherence to the notice provisions set forth in that section.

[6] R. C. 4909.18 has been amended since the *Ohio Bell Telephone Co.* v. *Pub. Util. Comm.* (1969), 17 Ohio St. 2d 45, decision. The General Assembly has still, however, provided for an expedited proceeding before the commission. When the commission decides to hold a hearing on a rate reduction or new service offering, it is directed to issue an order, when practical, within six months from the filing of the application.

to review such matters that may be unjust or unreasonable. An interpretation of R. C. 4909.43(B) that would require 90 days notice prior to effectiveness of all such proposals, even to those which are just and reasonable, would be in direct conflict with R. C. 4909.18 and the policies enunciated by this court in the *Ohio Bell Telephone Co.* v. *Pub. Util. Comm.,* *supra,* case.[7]

Appellant's final argument as to notice is that the commission was required by R. C. 4909.19 to publish notice of the hearing one time in a newspaper of general circulation in each county in the service area affected by the application rather than by registered mail pursuant to R. C. 4903.10.[8]

This argument must also fail. R. C. 4909.18 requires published notice only where it appears to the commission that the application may be unjust or unreasonable. The commission herein has consistently found the opposite.[9] In addition, the hearing held, insofar as the street-lighting tariff was concerned, was a rehearing[10] pursuant to R. C. 4903.10,[11] and

---

[7] Requiring adherence to R. C. 4909.43(B) would delay new service offerings and would throw into question all previous new service offerings authorized by the commission since September 1976, the effective date of R. C. 4909.43(B).

[8] Appellant does not contest the fact that notice of the rehearing was accomplished.

[9] The commission's rehearing entry of October 5th restated the commission's belief that it did not appear to the commission that the proposed street-lighting rates may be unjust or unreasonable. Likewise, the July 25, 1980, order found the tariff to be just and reasonable.

[10] The commission issued its first order in the street-lighting case on August 8, 1979. On September 6, the appellant timely filed an application for rehearing. The commission issued on October 5, 1979, an "Entry on Rehearing" which rejected the appellant's grounds for rehearing. This entry provided, however, that the reasonableness of the rates would be considered in a proceeding where the general rate increases were being challenged. Pursuant to a commission order of March 19, 1980, post card notices were sent by certified mail to the municipalities involved in the street-lighting case setting April 2, 1980, as the date for the hearing on the cases. Appellant's argument relates to the notification for the April 2, 1980, hearing.

[11] R. C. 4903.10 provides, in part:

"After any order has been made by the public utilities commission, any party who has entered an appearance in person or by counsel in the proceeding may apply for a rehearing in respect to any matters determined in said proceeding. Such application shall be filed within thirty days after the entry of the order upon the journal of the commission.

"* * *

notice to all parties was properly served pursuant to that section.

Appellant further maintains that the imposition of the street-lighting tariffs without prior notice or hearing violates the due process clauses of the Ohio and United States Constitutions. Justice Paul W. Brown, in his dissent in *Committee Against MRT* v. *Pub. Util. Comm.* (1977), 52 Ohio St. 2d 231, 239, stated that the right to participate in a rate-making proceeding is statutory, and not constitutional.[12] See *Sellers* v. *Iowa Power & Light Co.* (S.D. Iowa, 1974), 372 F. Supp. 1169; *Georgia Power Co.* v. *Allied Chemical Corp.* (1975), 233 Ga. 558, 212 S.E. 2d 628; *Rivera* v. *Chapel* (C.A. 1, 1974), 493 F. 2d 1302.

Thus, any legal right which a ratepayer would have to notice or a hearing would have to stem directly from the statutes. Since the commission did not find that the rates were unjust or unreasonable, a hearing was not required prior to the implementation of the rates by R. C. 4909.19. As a consequence, the ratepayer had no statutory right to a hearing or notice and thus failure to so provide did not constitute a violation of due process.

Appellant also challenges several factual determinations made by the commission.[13] These determinations must be reviewed in light of the well-established precedent that this court will not substitute its judgment for that of the commission in the absence of a showing of misapprehension, mistake or willful disregard of duty. *Columbus* v. *Pub. Util. Comm.* (1979), 58 Ohio St. 2d 103.

Appellant first alleges that the commission erred in failing to allow evidence at the rehearing showing that the previous contract rates and the proposed contract rates which appellant

"Where such application for rehearing has been filed, the commission may grant and hold such rehearing on the matter specified in such application, if in its judgment sufficient reason therefor is made to appear. Notice of such rehearing shall be given by registered mail to all parties who have entered an appearance in the proceeding."

[12] The majority opinion in that case was based entirely on statutory authority and indicated no disagreement with Justice Paul W. Brown's conclusion.

[13] It must be remembered that the question at this point of the proceeding was whether the application may be unjust or unreasonable. There are no provisions requiring a report of investigation or a hearing. This is a sharp contrast to the procedures followed in rate increase applications.

rejected were substantially lower than the tariff rates. The commission found the rates to be irrelevant to their review. According to the commission's decision, "[t]he issue to be decided is whether the tariff rates are just and reasonable, a question which can only be resolved through an analysis of the cost of providing the service governed by the street lighting tariffs." In addition, the commission has no jurisdiction over the contracts CEI negotiates with its municipal customers.

No evidence was presented to show that the contract rates themselves were just and reasonable, and thus an appropriate standard. Furthermore, no evidence was offered to show that the contract rate would be appropriate in a tariff-setting situation. In addition, testimony was offered that the contract rate being proposed was based on the 1977 expense levels, whereas the tariff was premised on 1978 expense levels. In view of this evidence, this court does not find that the commission's exclusion of this evidence was in willful disregard of its duty.

Appellant also argues that the commission's staff report of investigation was deficient because it contained no substantive discussion of the street-lighting question. This report was prepared and issued pursuant to R. C. 4909.19 in the rate increase case to which this matter was consolidated for the limited purpose of hearing. There is no requirement, statutory or otherwise, that the commission's staff participate in the rehearing of an application which did not propose to increase rates.

The commission's decision to impose a single rate of return for all CEI's jurisdictional service is supported by the evidence. This court does not find the commission's position that it is too difficult to carve out various services in determining the various rates of return to justify that procedure is in willful disregard of its duty.

Appellant also contests the approved tariffs that provide a special charge for replacement of lamps with ones of smaller wattage without any charge for lamp replacement of larger wattage. Appellant contends that this tariff is anticonservationist. While it is unusual that no charge is made for the replacement of higher wattage bulbs, it does not necessarily render the tariff unreasonable in this regard. A review of the record indicates that the charge was cost justified, and

thus we cannot find that the commission's approval of that tariff provision was unreasonable.

The final condition for the tariffs with which Cleveland is concerned is the one which provides for termination of service for nonpayment. Appellant asserts that since notice prior to termination is not required, the provision is contrary to due process of law. This court rejects this position. Notice is provided in the fact that termination is for nonpayment and only after nonpayment has reached 90 days. See, *e.g., Jackson* v. *Metropolitan Edison Co.* (1974), 419 U. S. 345.

For the foregoing reasons, the order of the commission is neither unlawful nor unreasonable and is affirmed.

*Order affirmed.*

CELEBREZZE, C. J., W. BROWN, P. BROWN, SWEENEY, HOLMES and C. BROWN, JJ., concur.

LOCHER, J., dissenting. CEI has provided street lighting in Cleveland and its environs for approximately 100 years. Accordingly, the majority's determination that streetlighting is a "new service" ignores the plain meaning of R. C. 4909.18. This provision requires that the utility's "application shall fully describe the new service * * * and shall explain *how the proposed service* * * * *differs* from services * * * presently offered or in use * * *." (Emphasis added.) Clearly, this provision anticipates *new functions* not new filings.

Yet, the majority adopts the "new filing" criterion which this court articulated in *Cookson Pottery* v. *Pub. Util. Comm.* (1954), 161 Ohio St. 498. Nevertheless, *Cookson* was decided over 20 years before the General Assembly passed the current version of R. C. 4909.18. This court should distinguish *Cookson,* because the rates filed by the utility in that case were identical to those which former customers had paid. CEI's proposed rates, on the other hand, were much higher. Indeed, CEI first proposed increased rates under the new contract. Then, CEI increased the rates again under its "new service" application. A mere application should not increase streetlighting rates, however, because CEI failed to demonstrate any difference in service.

Accordingly, I would reverse the commission's order and remand for proceedings consistent with this opinion.