[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Black Fork Wind Energy, L.L.C.,* Slip Opinion No. 2018-Ohio-5206.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-5206

IN RE APPLICATION OF BLACK FORK WIND ENERGY, L.L.C., FOR A CERTIFICATE TO SITE A WIND-POWERED ELECTRIC GENERATING FACILITY IN CRAWFORD AND RICHLAND COUNTIES, OHIO; BIGLIN ET AL., APPELLANTS; POWER SITING BOARD ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Black Fork Wind Energy, L.L.C.,* Slip Opinion No. 2018-Ohio-5206.]

*Power Siting Board—Motion to extend duration of siting certificate for wind-powered electric generating facility—Power Siting Board's extension of certificate constituted an "amendment" under R.C. 4906.06(E) and 4906.07(B)—Power Siting Board acted unlawfully in extending certificate by granting motion rather than following statutory procedures for amending a certificate—Orders reversed and cause remanded.*

(No. 2017-0412—Submitted August 1, 2018—Decided December 27, 2018.)

APPEAL from the Power Siting Board, No. 10-2865-EL-BGN.

_____

**DeGenaro, J.**

{¶ 1} Appellants, Gary J. Biglin, Karel A. Davis, Brett A. Heffner, Alan Price, Catherine Price, Margaret Rietschlin, and John Warrington, appeal from orders of the Power Siting Board granting a motion filed by intervening appellee, Black Fork Wind Energy, L.L.C. ("Black Fork"), requesting a two-year extension of Black Fork's certificate to construct a proposed wind farm. Appellants argue that the two-year extension amounted to an "amendment" of the certificate under R.C. 4906.06(E) and 4906.07(B) and that the board therefore erred by granting Black Fork's motion rather than complying with the statutory process for amending a certificate. Appellants also assert that the board's failure to treat the two-year extension as an amendment allowed Black Fork to evade current turbine-setback requirements that apply when an existing certificate is amended.

{¶ 2} We conclude that the board's extension of Black Fork's certificate constitutes an amendment and that the board acted unlawfully in granting Black Fork's motion rather than following the statutory procedures for amending a certificate. Because this error prejudiced appellants, we reverse the board's orders and remand this cause for further proceedings consistent with this opinion.

## Facts and Procedural Background

{¶ 3} This is the second appeal involving the proposed Black Fork Wind Energy Project. As we previously explained:

> In March 2011, Black Fork filed an application to construct a wind farm consisting of up to 91 turbines in portions of Crawford and Richland Counties. In addition to the turbines, Black Fork's project includes access roads, electrical collection lines, a construction-staging area, a concrete-batch plant, a substation, and an operation and maintenance facility. The project area covers approximately 24,000 acres of land, and the facilities will be located on

approximately 14,800 acres of leased private land with 150 participating landowners. According to Black Fork's application, voluntary agreements have been signed by the participating property owners within the project area. Black Fork claims that the facility will provide up to 200 megawatts of renewable energy "with effectively zero air emissions and waste generation."

*In re Application of Black Fork Wind Energy, L.L.C.*, 138 Ohio St.3d 43, 2013-Ohio-5478, 3 N.E.3d 173, ¶ 2.

**{¶ 4}** After Black Fork filed its initial application, several local political subdivisions and individuals—including the appellants in this case, who claimed to live near the leased land or within the project boundaries—intervened in the board proceeding. In October 2011, the board conducted an evidentiary hearing, and in January 2012, it granted Black Fork a certificate to construct the proposed wind farm.

**{¶ 5}** The board's order adopted stipulated conditions agreed to by several of the parties and the board's staff (but not by the appellants in this case), including "condition No. 70," which stated that the certificate "shall become invalid if the Applicant has not commenced a continuous course of construction of the proposed facility within five (5) years of the date of journalization of the certificate." Because the board journalized its decision on January 23, 2012, Black Fork had until January 23, 2017, to commence construction.

**{¶ 6}** Five of the seven appellants involved in the present case appealed to this court, but in December 2013, we affirmed the board's order granting Black Fork's certificate. *See Black Fork Wind Energy* at ¶ 23-24.

**{¶ 7}** On September 12, 2014, Black Fork filed the motion that is the subject of this appeal with the board under the same case number (No. 10-2865-EL-BGN) in which Black Fork's certificate had been granted, seeking to extend its certificate

by two years, with a new commencement-of-construction deadline of January 23, 2019. Black Fork argued that the delay caused by the prior appeal to this court combined with recent changes in the energy market had hampered its ability to commence construction of the project. Most of the appellants—who were then acting pro se—filed responses opposing Black Fork's motion to extend the certificate.

{¶ 8} Also on September 12, 2014, Black Fork filed an application to amend its certificate, which created a new proceeding before the board with a new case number (No. 14-1591-EL-BGA).[1] In its application to amend, Black Fork asserted that two new turbine models had become available since it originally applied for a certificate and that the new models would increase the productivity of the project. Black Fork therefore requested that the board amend its certificate to include the two new models. Some of the appellants involved in the present case intervened in Black Fork's amendment-application proceeding and opposed Black Fork's request.

{¶ 9} As will be explained more fully below, Ohio law requires the board's staff to investigate any application to amend a siting certificate and to issue a report of its findings. Accordingly, board staff investigated Black Fork's amendment application in case No. 14-1591-EL-BGA and, in August 2015, filed a report recommending approval of the application. Later that month, on August 27, 2015, the board issued an order formally approving it. Notably, the board determined that the turbine-setback requirements in place at the time it initially certified Black Fork's proposed wind farm continued to apply to Black Fork's project—notwithstanding the legislature's enactment of a more stringent turbine-setback law in 2014, which provides in two different statutes that "[a]ny amendment made to an existing certificate after the effective date of" of the new legislation—September

---

[1] On August 25, 2017, we granted Black Fork's motion to supplement the appellate record in this case with the board's record for case No. 14-1591-EL-BGA.

15, 2014—"shall be subject" to the new setback requirements. R.C. 4906.20(B)(2)(b)(ii) and 4906.201(B)(2). Even though Black Fork had labeled the application to change the certificate as one seeking to "amend" it and even though board staff had conducted an investigation under a new case number, the board reasoned that the changes proposed in Black Fork's amendment application "[did] not constitute an amendment under R.C. 4906.201(B)(2)" and that therefore the new setback requirements did not apply. No one—including the appellants in the present case—appealed the board's order in case No. 14-1591-EL-BGA approving Black Fork's 2014 amendment application.

{¶ 10} About seven months later, on March 24, 2016, the board in the case now before us granted Black Fork's motion to extend the certificate. Appellants filed a rehearing application, which the board denied in an order issued on February 2, 2017. Appellants then filed this appeal, raising four propositions of law. We granted Black Fork's motion for leave to intervene to defend the board's orders.[2]

**Standard of Review**

{¶ 11} We will reverse, modify, or vacate an order of the Power Siting Board "only when our review of the record reveals that the order is unlawful or unreasonable." *In re Application of Champaign Wind, L.L.C.*, 146 Ohio St.3d 489, 2016-Ohio-1513, 58 N.E.3d 1142, ¶ 7; *see* R.C. 4906.12 (incorporating the standard of review from R.C. 4903.13). We will not reverse or modify a board's order as to questions of fact when the record contains sufficient probative evidence

---

[2] Although not part of the record on appeal in the present case, the parties recognize and refer to the fact that after appellants commenced this appeal, Black Fork filed another application to amend its certificate, which created a third related proceeding before the board, under a new case number (No. 17-1148-EL-BGA). In the third proceeding, Black Fork sought to use a new version of one of its previously approved turbine models, and it also asked the board to extend the certificate by another year—from January 23, 2019, to January 23, 2020. The board approved Black Fork's application in case No. 17-1148-EL-BGA on December 7, 2017, and issued an order denying an application for rehearing on June 21, 2018. On August 9, 2018, the appellants in that case—the same seven individuals who are appealing the orders in the present case—appealed those board orders to this court. That appeal is currently pending as case No. 2018-1134.

to show that the order was not manifestly against the weight of the evidence and was not so clearly unsupported by the record as to show misapprehension, mistake, or willful disregard of duty. *Champaign Wind* at ¶ 7. But as to questions of law, we have complete and independent power of review in appeals from the board. *Id.*

### R.C. Chapter 4906 and related Administrative Code provisions

{¶ 12} The board has exclusive authority to issue certificates of environmental compatibility and public need for construction, operation, and maintenance of "major utility facilities" such as the proposed wind farm at issue in this case. *In re Application of Buckeye Wind, L.L.C.*, 131 Ohio St.3d 449, 2012-Ohio-878, 966 N.E.2d 869, ¶ 2; R.C. 4906.01, 4906.03, and 4906.13. R.C. Chapter 4906 and the board's administrative rules also set out a procedure for amending a certificate. *See* R.C. 4906.06(A) and (E) and former Ohio Adm.Code 4906-5-10(B), 2008-2009 Ohio Monthly Record 2-4257, effective June 19, 2009.[3]

{¶ 13} Most importantly for purposes of this case, to commence the amendment process, a litigant must first file an application with the board that is "in such form and contain[s] such information as the board prescribes." R.C. 4906.06(E). Applications for amendments must contain the information enumerated in R.C. 4906.06(A) and must "be submitted in the same manner as if they were applications for a certificate." Former Ohio Adm.Code 4906-5-10(B), 2008-2009 Ohio Monthly Record 2-4257. After receiving an amendment application, board staff must investigate the application and submit a report containing recommended findings on whether the application meets certain statutory criteria. *See* R.C. 4906.07(C) and former Ohio Adm.Code 4906-5-05(D), 2008-2009 Ohio Monthly Record 2-3661, effective May 7, 2009. In addition, if

---

[3] Although the board amended and renumbered former Ohio Adm.Code 4906-5-10 (*see* Ohio Adm.Code 4906-3-11 and 4906-6-12) and 4906-5-05 (*see* Ohio Adm.Code 4906-3-06), 2015-2016 Ohio Monthly Record 2-1890 and 2-1896, effective December 11, 2015, the former rules remain applicable to this case because they were in effect at the time Black Fork filed its September 12, 2014 motion to extend the certificate for its proposed wind farm.

certain statutory conditions are met, a hearing on the amendment application may be necessary. *See* R.C. 4906.07(B).

{¶ 14} The parties here appear to agree on the correct process for amending a certificate. They disagree, however, on the meaning of "amendment" and, more specifically, on whether extending a certificate constitutes an "amendment" of the certificate. Neither the Revised Code in Chapter 4906 nor the board's applicable administrative rules define what constitutes an "amendment" or when an amendment is necessary. Accordingly, the primary issue before us is whether the board's two-year extension of Black Fork's certificate amounted to an "amendment" of that certificate.

**The two-year certificate extension amounted to an amendment**

{¶ 15} Appellants assert that extending Black Fork's certificate was an "amendment" because it modified a material condition of the original certificate— namely, the five-year commencement-of-construction deadline of condition No. 70. Therefore, in their first proposition of law, appellants assert that the board acted unreasonably and unlawfully by amending Black Fork's certificate through the motion Black Fork filed rather than by following the statutory process for amending a certificate. In their second proposition of law, appellants assert that the board lacked authority to alter, waive, or dispense with the statutory procedures.

{¶ 16} In response, the board argues that because R.C. Chapter 4906 does not define "amendment," the board—as the agency entrusted to enforce power-siting laws—has broad discretion to determine whether a particular change to a certificate should be regarded as an "amendment." In consideration of the entire statutory scheme, the board asserts in its brief that "*a proposed change to the facility* is required" for a change "to constitute an amendment." (Emphasis sic.) And because a "decision whether to modify a procedural timeline involves no change to the facility," the board asserts that the statutory process for amending a certificate was not invoked and did not need to be followed in this case. According to the

board, the legislature did not expect the board to "re-litigate a case over a mere timing issue." The board further notes that it has consistently extended the durations of certificates by granting motions starting in 1996 and that its long-standing, unchallenged administrative practice is entitled to deference. Black Fork similarly argues that the relevant statutes and administrative rules support the board's definition of "amendment" and the board's practice of extending certificates by granting motions.

{¶ 17} When construing a statute, we first look to its plain language. *State v. Thomas*, 148 Ohio St.3d 248, 2016-Ohio-5567, 70 N.E.3d 496, ¶ 7. If the meaning of a statute is unambiguous, we must apply it as written without further interpretation. *Weiss v. Pub. Util. Comm.*, 90 Ohio St.3d 15, 17, 734 N.E.2d 775 (2000). Most importantly for this case, "[i]n the absence of a definition of a word or phrase used in a statute, words are to be given their common, ordinary, and accepted meaning." *State v. Black*, 142 Ohio St.3d 332, 2015-Ohio-513, 30 N.E.3d 918, ¶ 39, citing *Wachendorf v. Shaver*, 149 Ohio St. 231, 78 N.E.2d 370 (1948), paragraph five of the syllabus; *see also Rhodes v. New Philadelphia*, 129 Ohio St.3d 304, 2011-Ohio-3279, 951 N.E.2d 782, ¶ 17.

{¶ 18} *Black's Law Dictionary* defines "amendment" as "[a] formal and usu. minor revision or addition proposed or made to a statute, constitution, pleading, order, or other instrument; specif., a change made by addition, deletion, or correction; esp., an alteration in wording." *Black's Law Dictionary* 98 (10th Ed.2014). *Webster's Third New International Dictionary* defines "amendment" as the "act of amending esp. for the better; correction of a fault or faults; reformation," "the process of amending (as a motion, bill, act, or constitution)," and "an alteration proposed or effected by such process." *Webster's Third New International Dictionary* 68 (2002). And "amend" is defined as "to change or alter in any way esp. in phraseology" or "to alter (as a motion, bill, or law) formally by modification, deletion, or addition." *Id.*

**{¶ 19}** Under any common, ordinary, and accepted meaning, the board's actions here amounted to an "amendment" of Black Fork's certificate. In its order approving the original certificate, the board adopted condition No. 70, which provided that "[t]he certificate shall become invalid if the Applicant has not commenced a continuous course of construction of the proposed facility within five (5) years of the date of journalization of the certificate." In the orders on appeal, the board altered this deadline by giving Black Fork two additional years to start constructing the proposed wind project and it therefore revised the certificate's original expiration date from January 23, 2017, to January 23, 2019. In other words, the board amended condition No. 70 by changing the compliance deadline.

**{¶ 20}** Because the board is a creature of statute, it can exercise only those powers the legislature confers on it. *See Discount Cellular, Inc. v. Pub. Util. Comm.*, 112 Ohio St.3d 360, 2007-Ohio-53, 859 N.E.2d 957, ¶ 51; R.C. 4906.02(A). And because the controlling statutes require the filing of an *application* to amend a certificate, the board acted unlawfully by amending the certificate based on Black Fork's *motion*. Black Fork should have instead filed an amendment application, and board staff should have investigated the application and issued a report.

**{¶ 21}** Administrative deference is not necessary in this case. Because the statutory language is clear we need go no further than applying the common and ordinary meaning of "amendment" to resolve this appeal. Nor does our decision necessarily require the board "to re-litigate a case over a mere timing issue" as the board claims in its brief. As the board's counsel acknowledged during oral argument and as the record demonstrates, the board has discretion to tailor a staff investigation to fit the circumstances of an application to amend a siting certificate. For example, board staff issued a 71-page report after investigating Black Fork's initial application to construct the proposed wind farm. But after investigating Black Fork's application to amend the certificate in case No. 14-1591-EL-BGA,

staff issued a three-page report focused only on Black Fork's specific request to add two new turbine models. Further, R.C. 4906.07(B) requires the board to hold a hearing on an application to amend a certificate only if certain conditions are met.

{¶ 22} Accordingly, we conclude that the board's two-year extension of the certificate amounted to an "amendment" and that the board therefore acted unlawfully by failing to comply with the statutory process for amending a certificate.

### Appellants have established prejudice

{¶ 23} This court will not reverse an order of the board "unless the party seeking reversal shows that it has been or will be harmed or prejudiced by the order." *In re Complaint of Buckeye Energy Brokers, Inc. v. Palmer Energy Co.*, 139 Ohio St.3d 284, 2014-Ohio-1532, 11 N.E.3d 1126, ¶ 19. The board and Black Fork assert that even if the board erred by extending Black Fork's certificate by granting Black Fork's motion, appellants have not shown that they were prejudiced by the board's orders. For example, Black Fork argues that appellants were not prejudiced by the lack of a staff report because board staff was familiar with Black Fork's project and conducted investigations and filed staff reports in 2011 (for the original certificate), 2015 (for the amendment application in case No. 14-1591-EL-BGA), and 2017 (for the amendment application in case No. 17-1148-EL-BGA). According to Black Fork, if staff had had any objections to the two-year certificate extension, staff would have expressed those objections during one of those investigations.

{¶ 24} Appellants were harmed in at least two ways. First, they never received the benefit of a staff investigation and report regarding Black Fork's specific request to extend the certificate for two years past the initial expiration date. We have explained that the purpose of a staff report—in that case, in the context of a public utility's rate-increase application—is " 'to facilitate meaningful contest of rate increase applications by providing interested parties with the

materials necessary for an informed challenge.' " *Ohio Consumers' Counsel v. Pub. Util. Comm.*, 67 Ohio St.2d 153, 161, 423 N.E.2d 820 (1981), quoting *Duff v. Pub. Util. Comm.*, 56 Ohio St.2d 367, 376, 384 N.E.2d 264 (1978). Here, appellants did not receive the materials necessary for an informed challenge. Further, we presume that a staff investigation and report is more than a mere formality. Therefore, the fact that staff investigated the separate and distinct issues raised in Black Fork's two amendment applications is not an appropriate substitute for an investigation of the specific issues raised in the motion filed by Black Fork in 2014 that is the subject of this case.

{¶ 25} Second, appellants have shown a realistic possibility of a different outcome but for the board's error in extending Black Fork's certificate by granting Black Fork's motion. For example, had the board treated the motion for an extension as an application for an amendment, the current setback provisions in R.C. 4906.20 and 4906.201 may have been triggered. Alternatively, appellants assert that a consequence of the board's error in granting Black Fork's motion is that the extension is invalid, which, according to appellants, caused the certificate by its original terms to have expired in January 2017. Although ultimate resolution of the merits of those issues is beyond the scope of this appeal, they are relevant to our determination of prejudice. Because there is the possibility of a different outcome but for the board's error, appellants have established that they were prejudiced by the board's orders.

**Appellants' remaining propositions of law**

{¶ 26} In appellants' third proposition of law, they assert that the board may not extend a certificate absent a showing of good cause and that "because the Board's staff failed to generate the required report of its investigation, there has been no showing of good cause justifying the extension." Because we determine that the board erred by not following the statutory process for amending a certificate, we need not reach this issue.

{¶ 27} In their fourth proposition of law, appellants claim that the board's orders in the present case and also those issued in the related proceedings have permitted Black Fork to evade the current turbine-setback provisions in R.C. 4906.20(B)(2) and 4906.201, and appellants seek an instruction from this court directing the board to apply the current setback provisions "to any amendment of Black Fork's certificate." Black Fork proffers statutory-construction arguments and arguments based on the Ohio Constitution to oppose application of those setback requirements to its project. The board argues that the setback issues are "irrelevant" to the narrow question before the court in this appeal, but it has nonetheless moved for leave to file a surreply brief to address one—but not all—of Black Fork's constitutional challenges to R.C. 4906.20 and 4906.201.

{¶ 28} R.C. 4906.201(B)(2) provides that the current setback provisions apply to "[a]ny amendment made to an existing certificate after the effective date" of the legislation establishing the current setback distance. In the orders on appeal, the board did not treat Black Fork's requested certificate extension as an "amendment," and it therefore did not apply R.C. 4906.201 or otherwise interpret the statute. Nor did the board address Black Fork's various challenges to the application of the current setback statutes to its project.

{¶ 29} We have long held that "[c]onstitutional questions will not be decided until the necessity for a decision arises on the record before the court." *State ex rel. Herbert v. Ferguson*, 142 Ohio St. 496, 52 N.E.2d 980 (1944), paragraph two of syllabus. And we recently reiterated that " 'if it is not necessary to decide more, it is necessary not to decide more.' " *Capital Care Network of Toledo v. Dept. of Health*, 153 Ohio St.3d 362, 2018-Ohio-440, 106 N.E.3d 1209, ¶ 31, quoting *PDK Laboratories, Inc. v. United States Drug Enforcement Admin.*, 362 F.3d 786, 799 (D.C.Cir.2004) (Roberts, J., concurring in part and concurring in judgment). Because this case can be resolved on the issue whether the board properly extended Black Fork's certificate by granting its motion and because the

board did not fully address the setback issues in the orders on appeal, we decline to decide in this appeal the applicability and constitutionality of the setback provisions in R.C. 4906.20(B)(2) and 4906.201. Resolution of those questions must await a case in which the issues are squarely before us.

{¶ 30} In sum, for the reasons explained above, we hold that the board acted unlawfully by extending Black Fork's certificate by granting Black Fork's motion rather than requiring it to file an application to amend the certificate. Appellants have shown that there is a realistic possibility of a different outcome but for the board's error in extending Black Fork's certificate by granting the motion, and they have therefore established prejudice. Accordingly, we reverse the board's orders and remand this cause for further proceedings consistent with this opinion. We also deny the board's amended motion for leave to file a surreply brief.

Orders reversed<br>and cause remanded.

O'CONNOR, C.J., and KENNEDY, FRENCH, and DEWINE, JJ., concur.

KENNEDY, J., concurs, with an opinion joined by DEWINE, J.

FISCHER, J., dissents, with an opinion joined by O'DONNELL, J.

_____

**KENNEDY, J., concurring.**

{¶ 31} I agree with and join the majority opinion's analysis applying the plain meaning of the word "amendment" as well as its conclusion that the appellants in this case were prejudiced when the Power Siting Board extended the certificate issued to Black Fork Wind Energy, L.L.C., to construct a wind farm without first requiring Black Fork to file an application to amend the certificate. I write separately, however, to explain why R.C. 4906.06 applies to Black Fork's request for a two-year extension of the time to commence construction of its project and to respond to the dissenting opinion's position that R.C. 4906.07(B) supports its view

that an "amendment" of a certificate is at issue only when there is a proposed change in the facility.

**{¶ 32}** This case presents a straightforward question of statutory interpretation. Our duty in construing a statute is to determine and give effect to the intent of the General Assembly as expressed in the language it enacted. *Griffith v. Aultman Hosp.*, 146 Ohio St.3d 196, 2016-Ohio-1138, 54 N.E.3d 1196, ¶ 18; *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, ¶ 20. A court therefore cannot insert language into a statute under the guise of statutory interpretation. *Doe v. Marlington Local School Dist. Bd. of Edn.*, 122 Ohio St.3d 12, 2009-Ohio-1360, 907 N.E.2d 706, ¶ 29. Instead, when the language of a statute is plain and unambiguous and conveys a clear and definite meaning, our role is to apply it as written. *Pelletier v. Campbell*, 153 Ohio St.3d 611, 2018-Ohio-2121, 109 N.E.3d 1210, ¶ 14.

**{¶ 33}** R.C. 4906.06(A) provides that an applicant seeking a certificate of environmental compatibility and public need for construction, operation, and maintenance of a "major utility facility" from the board shall file an application "in such form as the board prescribes." This statute requires the application to contain information describing the facility, a summary of environmental-impact studies conducted, and a statement explaining the need for the facility, why the proposed location is best, and how the facility fits into the applicant's forecast report submitted under R.C. 4935.04. The applicant can include any other relevant information.

**{¶ 34}** R.C. 4906.06 also includes a provision governing the amendment of a certificate. R.C. 4906.06(E) states, "An application for an amendment of a certificate shall be in such form and contain such information as the board prescribes. Notice of such an application shall be given as required in divisions (B) and (C) of this section." Pursuant to this authority, the board has promulgated an administrative rule requiring the application to be submitted in the same form and

14

reviewed in the same manner as an application for a certificate. Former Ohio Adm.Code 4906-5-10(B), 2008-2009 Ohio Monthly Record 2-4257, effective June 19, 2009, is the rule applicable here; *see also* Ohio Adm.Code 4906-3-11(B), effective December 11, 2015.

{¶ 35} At issue in this case is whether Black Fork could seek a two-year extension of the time for it to commence construction of the facility by filing a motion or whether it was required to apply for an amendment of the certificate in order to extend it.

{¶ 36} Relevant here, R.C. 4906.06(A) states that "[t]he application shall be filed not more than five years prior to the planned date of commencement of construction. The five-year period may be waived by the board for good cause shown." The date of commencement becomes a condition of the certificate, and here, condition No. 70 of the certificate as stipulated by the parties (and later adopted by the board) provides that the certificate "shall become invalid if the Applicant has not commenced a continuous course of construction of the proposed facility within five (5) years of the date of journalization of the certificate."

{¶ 37} Therefore, the obligation to "commence[ ] a continuous course of construction" within five years from the date the certificate was journalized is an express condition of the certificate, and because the motion for a two-year extension of the time for commencement of construction of the facility sought to amend that certificate, Black Fork was required to file an application for amendment in accord with R.C. 4906.06. Only after Black Fork first filed an application to amend the certificate in compliance with R.C. 4906.06 would R.C. 4906.07(B) then be applicable, but the latter statute governs only the board's consideration of whether it is required to hold a hearing similar to a hearing on an application for a certificate. The board therefore erred when it amended the certificate by granting Black Fork's motion without complying with the proper procedure.

**{¶ 38}** The dissenting opinion, however, focuses on R.C. 4906.07(B) as establishing a limitation on what types of modifications to a certificate amount to an "amendment" that must be requested through the filing of an application. That statute establishes guidelines for conducting a hearing and investigating applications for a certificate and for an amendment to a certificate:

(A) Upon the receipt of an application complying with section 4906.06 of the Revised Code, the power siting board shall promptly fix a date for a public hearing thereon, not less than sixty nor more than ninety days after such receipt, and shall conclude the proceeding as expeditiously as practicable.

(B) On an application for an amendment of a certificate, the board shall hold a hearing in the same manner as a hearing is held on an application for a certificate if the proposed change in the facility would result in any material increase in any environmental impact of the facility or a substantial change in the location of all or a portion of such facility other than as provided in the alternates set forth in the application.

(C) The chairperson of the power siting board shall cause each application filed with the board to be investigated and shall, not less than fifteen days prior to the date any application is set for hearing submit a written report to the board and to the applicant. A copy of such report shall be made available to any person upon request. Such report shall set forth the nature of the investigation, and shall contain recommended findings with regard to division (A) of section 4906.10 of the Revised Code and shall become part of the record and served upon all parties to the proceeding.

R.C. 4906.07.

{¶ 39} The dissent reasons that because R.C. 4906.07(B) requires a hearing only when "the proposed change in the facility" would materially increase the facility's environmental impact or substantially change its location, the General Assembly must have intended that a certificate holder must file an application for amendment of a certificate only when the certificate holder proposes changes to the facility.

{¶ 40} The problem with that analysis, however, is that the legislature did not hide substantive limitations on the amendment of a certificate in a provision that specifically addresses when "the board shall hold a hearing," R.C. 4906.07(B), and nothing more. Rather, a legislature "is generally presumed to act intentionally and purposely when it includes particular language in one section of a statute but omits it in another." *NACCO Industries, Inc. v. Tracy*, 79 Ohio St.3d 314, 316, 681 N.E.2d 900 (1997). This is so, because the General Assembly must be presumed "to know the meaning of words, to have used the words of a statute advisedly and to have expressed legislative intent by the use of the words found in the statute * * * and * * * the court may write no limitations therein." *Wachendorf v. Shaver*, 149 Ohio St. 231, 237, 78 N.E.2d 370 (1948).

{¶ 41} Applying these cardinal principles of statutory construction reveals that R.C. 4906.07(B) simply distinguishes a category of applications to amend a certificate—those proposing a change in the facility—in which a hearing similar to the one required to be held upon an initial application may not be required. It does not demonstrate the legislative intent to limit the types of changes that constitute an "amendment" generally. Otherwise, the General Assembly would have also defined "amendment" to mean "a proposed change in the facility" or included similar language in R.C. 4906.06(E) to require a certificate holder to file an application for an amendment only when the certificate holder proposes changes to the facility. It did not, but rather it provided more general language regarding "[a]n

application for an amendment of a certificate." To accept the dissent's view would therefore require adding language to R.C. 4906.06(E) to specify "[a]n application for an amendment of a certificate *proposing a change in the facility*." But we may not, in the guise of statutory construction, add limiting language to a statute when the General Assembly did not enact that limitation, *Doe*, 122 Ohio St.3d 12, 2009-Ohio-1360, 907 N.E.2d 706, at ¶ 29.

{¶ 42} To support its position, the dissenting opinion notes that its view is consistent with the board's interpretation of R.C. 4906.07(B)—and the board itself argues that we are obliged to give "great respect and great weight" to its interpretation of the relevant statutes. Our caselaw recognizes that we may rely on the board's expertise in interpreting a law when "highly specialized issues" are involved and when "agency expertise would, therefore, be of assistance in discerning the presumed intent of our General Assembly." *Consumers' Counsel v. Pub. Util. Comm.*, 58 Ohio St.2d 108, 110, 388 N.E.2d 1370 (1979). And we have recognized that "[d]ue deference should be given to statutory interpretations by an agency that has accumulated substantial expertise and to which the General Assembly has delegated enforcement responsibility." *Weiss v. Pub. Util. Comm.*, 90 Ohio St.3d 15, 17-18, 734 N.E.2d 775 (2000), citing *Collinsworth v. W. Elec. Co.*, 63 Ohio St.3d 268, 272, 586 N.E.2d 1071 (1992).

{¶ 43} But here, the issue before us is neither highly specialized nor one related to the board's enforcement responsibility but rather requires us to engage in a familiar function—statutory construction—in which we apply fundamental principles. And because the interpretation of a statute is a question of law, we review the board's interpretation de novo and without deference. *Stewart v. Vivian*, 151 Ohio St.3d 574, 2017-Ohio-7526, 91 N.E.3d 716, ¶ 23. Not only does deferring to the board's construction of R.C. 4906.07(B) abdicate our function and responsibility as members of the judiciary to "say what the law is," *Marbury v. Madison*, 5 U.S. 137, 177, 2 L.Ed. 60 (1803), but also when we defer to an

18

administrative agency's interpretation of the law in the type of situation presented here, "we abandon our role as an independent check on the executive branch." *State ex rel. McCann v. Delaware Cty. Bd. of Elections*, ___ Ohio St.3d ___, 2018-Ohio-3342, ___ N.E.3d ___, ¶ 31 (DeWine, J., concurring in judgment only).

**{¶ 44}** Moreover, the dissenting opinion would rely on the board's "established administrative practice of considering certificate extensions based on motions rather than on amendment applications," noting that " 'long-standing administrative interpretations are entitled to special weight,' " dissenting opinion at ¶ 59, quoting *Cleveland v. Pub. Util. Comm.*, 67 Ohio St.2d 446, 451, 424 N.E.2d 561 (1981). Likewise, the board urges that we should not overturn its "practice interpreting its enabling statutes." However, such deference would disregard the legislative checks imposed on agency rulemaking. The General Assembly has delegated to the board the authority to draft rules that have the force of law. R.C. 4906.03. But the legislature has not written the board a blank check—it has retained oversight of agency rulemaking. A proposed rule "is subject to legislative review and invalidation under sections 106.02, 106.021, and 106.022 of the Revised Code," and it must be filed with the Joint Committee on Agency Rule Review (JCARR). R.C. 119.03(C). Members of the House of Representatives and the Senate serve on JCARR, and it may recommend that the House and Senate adopt a concurrent resolution to invalidate the proposed rule. R.C. 106.021; R.C. 106.041. By reserving the authority to adopt such an invalidating concurrent resolution, the General Assembly retains a legislative veto over agency rulemaking. R.C. 106.042. That oversight is lost if, as the dissent and the board contend, the board's practice controls the inquiry in the situation here.

**{¶ 45}** In any case, an agency cannot change the meaning of a statute or a rule simply by misapplying it repeatedly; because an agency has no authority beyond that which is conferred by statute, it cannot—through an errant course of practice—grant itself power withheld by the General Assembly. *See State ex rel.*

*Lucas Cty. Bd. of Commrs. v. Ohio Environmental Protection Agency,* 88 Ohio St.3d 166, 171, 724 N.E.2d 411 (2000). Rather, this court since 1917 has recognized that the authority of an administrative agency is limited to those powers granted to it by statute:

> In construing such grant of power, particularly administrative power through and by a legislative body, the rules are well settled that the intention of the grant of power, as well as the extent of the grant, must be clear; that in case of doubt that doubt is to be resolved, not in favor of the grant, but against it. It is one of the reserved powers that the legislative body no doubt had, but failed to delegate to the administrative board or body in question.

*State ex rel. A. Bentley & Sons Co. v. Pierce,* 96 Ohio St. 44, 47, 117 N.E. 6 (1917); *accord D.A.B.E., Inc. v. Toledo-Lucas Cty. Bd. of Health*, 96 Ohio St.3d 250, 2002-Ohio-4172, 773 N.E.2d 536, ¶ 40.

{¶ 46} Here, no statute gives the board authority to modify the certificate by granting Black Fork's motion. Rather, the only method specified by the relevant statute, R.C. 4906.06(E), for modifying a certificate is for the certificate holder to file an application for an amendment. If the dissent is correct that an "amendment" is at issue only when there is a proposed change in the facility, then there is no authority in R.C. Chapter 4906 for the board to modify any other conditions of the certificate. That view, however, cannot be squared with the broad language of R.C. 4906.06(E).

{¶ 47} Contrary to the dissent's reasoning, it does not make sense to require the same public notice, investigation, and review as that applicable to an initial application when a certificate holder proposes some change to the facility—regardless of how material the change is—but then to permit modification of all of

the other substantive conditions of a certificate by granting a certificate holder's motion without complying with any of the procedural safeguards mandated for granting a certificate in the first instance. There is no indication that the legislature intended to dispense with notice to stakeholders and the investigation required by statute when the board considers a substantive modification to the certificate, regardless of whether the certificate holder proposes a change in the facility or proposes to amend a condition of the certificate. And the dissenting opinion's position that the board's interpretation of R.C. 4906.07(B) must be correct because, if it is not, correcting a clerical error would require the certificate holder to file an application to amend the certificate is not persuasive; an application for an amendment is required to be filed only when the proposed change to the certificate amounts to an "amendment" of it.

{¶ 48} By deferring to the board's interpretation of law and past practice, the dissent disregards the judicial and legislative checks on the executive branch that are essential to our tripartite form of state government. A majority of this court therefore correctly rejects the dissent's reasoning.

DEWINE, J., concurs in the foregoing opinion.

_____

**FISCHER, J., dissenting.**

{¶ 49} I respectfully dissent. The Power Siting Board interprets R.C. 4906.07(B) both workably and reasonably. The majority opinion, by contrast, creates an unworkable rule that will result in a significant increase in the situations in which a certificate holder must file an application for an amendment of a siting certificate that was previously granted by the board. Further, the majority opinion relies on a plain-meaning definition of the term "amendment," but it reads the term in isolation. The majority opinion does this despite the fact that its plain-meaning interpretation is unsupportable when the term "amendment" is read in the context of the complete statutory scheme.

**{¶ 50}** As a starting point, the majority opinion notes that the General Assembly has not defined "amendment" in R.C. Chapter 4906. This is true, but only to the limited extent that R.C. 4906.01, which provides explicit definitions of several terms used in the statutory scheme, does not provide a specific definition of "amendment." However, as this court has previously explained, when construing statutes relating to the same subject matter, the court will "consider them together to determine the General Assembly's intent." *State v. South*, 144 Ohio St.3d 295, 2015-Ohio-3930, 42 N.E.3d 734, ¶ 8.

**{¶ 51}** Relying on R.C. 4906.07(B), the board in its brief argues that only "a *proposed change to the facility*" constitutes an amendment. (Emphasis sic.) And because an extension of a certificate's duration does not involve any change *to the facility*, the board argues that it properly approved the extension of the certificate previously granted to Black Fork Wind Energy, L.L.C., even though Black Fork did not file an application for an amendment of the certificate. The board further asserts that it has consistently extended certificates by granting motions since 1996 and that its long-standing administrative practice is entitled to considerable deference.

**{¶ 52}** R.C. 4906.07(B) provides:

> On an application for an amendment of a certificate, the board shall hold a hearing in the same manner as a hearing is held on an application for a certificate if *the proposed change in the facility* would result in any material increase in any environmental impact of the facility or a substantial change in the location of all or a portion of such facility other than as provided in the alternates set forth in the application.

22

(Emphasis added.) The board argues that the italicized portion of the statute demonstrates that the legislature presupposed that an "amendment" of a certificate is at issue only when changes in *the facility* are proposed. Therefore, argues the board, R.C. 4906.07(B) is good evidence that the General Assembly intended that only proposed changes to a facility require an "amendment" of the certificate.

{¶ 53} Reading the statute in context, particularly the phrase "the proposed change in the facility," R.C. 4906.07(B) provides that the board can approve *some* proposed changes to a certificate only if the certificate holder has filed an application for an amendment of the certificate. R.C. 4906.07(B), by implication, authorizes the board to consider and approve other changes to a certificate even if the certificate holder submits the request for a change in some other form, e.g., by motion. The remainder of the language in R.C. 4906.07(B) explains which types of applications for amendments necessitate that the board hold a hearing prior to rendering its decision.

{¶ 54} The phrase "*the* proposed change in the facility" (emphasis added), as used in R.C. 4906.07(B), makes sense only if there *is* a proposed change in the facility. If the legislature intended that a certificate holder needs to file an application for an amendment when the proposed change is not to "the facility," the statute would be worded to specify "*any* proposed change in the facility" or "the proposed change in the *certificate*." Under R.C. 4906.07(B), an "amendment" of a certificate is necessary only when the change proposed is a change to the facility.

{¶ 55} The concurring opinion speculates that "the legislature did not hide substantive limitations on the amendment of a certificate in a provision that specifically addresses when 'the board shall hold a hearing.' " Concurring opinion at ¶ 40, quoting R.C. 4906.07(B). The limitation, however, is in the text of the statutory scheme. The court's role is to interpret the statutory scheme, not to theorize that the legislature could have chosen a particular different method for providing a limitation that the legislature has plainly provided.

**{¶ 56}** Here, the board determined that an amendment of a certificate is at issue only when the proposed alteration to the certificate relates to a proposed change to the facility. The board's interpretation is consistent with the statutory scheme, and, as noted above, statutes relating to the same subject matter should be construed by considering them together. *South*, 144 Ohio St.3d 295, 2015-Ohio-3930, 42 N.E.3d 734, at ¶ 8.

**{¶ 57}** Moreover, the board's interpretation of the statute is workable whereas the majority opinion's interpretation is problematic. Surely, not every proposed minor revision or modification, change made by addition or deletion, correction of a mistake or mistakes, insignificant reformation, nonsubstantive adjustment, or other change or alteration in any way, especially in phraseology, to the original certificate necessitates that the certificate holder file an application for an amendment or that the board treat a motion to change a certificate as if it were an application to amend it. Having to conduct an investigation before approving an "amendment" every time a certificate holder requests a minor change to a certificate would create a substantial burden for the board in certain cases and, for that reason, would be unworkable in those cases. More importantly, such a reading of R.C. 4906.07(B) takes the phrase "the change in the facility" out of the context provided by the statute. Indeed, a plurality opinion of this court aptly described the power-siting statutes as authorizing "a dynamic process that does not end with the issuance of a construction certificate." *In re Application of Buckeye Wind, L.L.C.*, 131 Ohio St.3d 449, 2012-Ohio-878, 966 N.E.2d 869, ¶ 16.

**{¶ 58}** The concurring opinion states that "an application for an amendment is required to be filed only when the proposed change to the certificate amounts to an 'amendment' of it." Concurring opinion at ¶ 47. I respectfully disagree on this point because, as stated above, R.C. 4906.07(B) provides that an application for an amendment is required only when the change proposed is "a change in the *facility*" (emphasis added) not a change in the *certificate*.

24

**{¶ 59}** Further, the board has an established administrative practice of considering certificate extensions based on motions rather than on amendment applications. The board states in its brief that it has considered such motions in seven other siting cases starting with an order it issued in 1996. "This court has long recognized that long-standing administrative interpretations are entitled to special weight." *Cleveland v. Pub. Util. Comm.*, 67 Ohio St.2d 446, 451, 424 N.E.2d 561 (1981). This principle should not be lightly disregarded, especially considering that certificate holders have relied on the board's prior administrative practice in many situations and could be prejudiced by a significant change to the established process when no prior warning of the change has been given.

**{¶ 60}** R.C. 4906.07(B) has one workable and reasonable interpretation, and that interpretation—which the board has consistently applied as an established and long-standing administrative practice—was properly applied by the board in its orders in this case. Consequently, there is no need to decide whether the appellants were prejudiced when the board granted Black Fork's motion for an extension of its certificate.

**{¶ 61}** In conclusion, after reasonably interpreting R.C. 4906.07(B), the board determined that an amendment of a certificate is required only when the change proposed is a "proposed change in the facility." The board can approve an extension of the duration of a certificate by granting a motion under our statutory scheme because such a change does not involve a change "in the facility." This is in contrast to a proposed change that would require an amendment of the certificate because it does involve a change "to the facility."

**{¶ 62}** Here, the certificate extension does not involve a change "in the facility" and the board has acted in accordance with its longstanding administrative practice, which does not conflict with the statute. Hence, the board properly granted Black Fork's motion to extend the time to commence construction.

{¶ 63} I would affirm the board's decision and, therefore, I respectfully dissent.

O'DONNELL, J., concurs in the foregoing opinion.

_____

Benesch, Friedlander, Coplan & Aronoff, L.L.P., John F. Stock, and Mark D. Tucker, for appellants.

Michael DeWine, Attorney General, William L. Wright, Section Chief, and Werner L. Margard, Thomas G. Lindgren, and Robert A. Eubanks, Assistant Attorneys General, for appellee Ohio Power Siting Board.

Vorys, Sater, Seymour & Pease, L.L.P., Michael J. Settineri, and Daniel E. Shuey, for intervening appellee, Black Fork Wind Energy, L.L.C.

_____